ESTATE OF KENNITH H. BROWN, Deceased, KEITH WAYNE BROWN and KENNITH RAY BROWN, Administrators, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Estate of Brown v. Commissioner
Docket Nos. 21141-84; 21142-84; 21145-84
United States Tax Court
T.C. Memo 1988-297; 1988 Tax Ct. Memo LEXIS 326; 55 T.C.M. (CCH) 1249; T.C.M. (RIA) 88297; July 12, 1988. *326 H and W, who were husband and wife during the years in issue, filed joint Federal income tax returns for 1975 through 1978. H owned B, a company engaged in the business of manufacturing and selling insulation. During the years in issue, H circumvented the accounting system established for B by cashing, rather than depositing, many checks made payable to B. Such practice caused H and W, and B, to underreport their income on their Federal income tax returns. After an investigation by the Commissioner, H pled guilty to one count of income tax evasion for 1978. H and W were divorced in 1979. Held: (1) H and B are liable for the deficiencies in tax and additions to tax for fraud, as determined by the Commissioner. (2) W is not liable for the deficiencies determined by the Commissioner because she qualifies as an innocent spouse under sec. 6013(e), I.R.C. 1954; under the facts and circumstances, W also is not liable for the addition to tax for fraud. (3) The Commissioner is not barred by the statute of limitations from assessing and collecting the determined deficiencies and additions from H and B. (4) H's plea of guilty to a charge of criminal tax evasion for 1978 does not prevent *327 the Commissioner from proceeding against the petitioners in a civil action. J. Donald McLaughlin, for the petitioners. William P. Hardeman, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in, and additions to, the Federal income taxes of Kennith H. Brown and Lawanda B. Brown as follows: Additions to
Sec. 6653(b)
Year
Deficiency
[2] I.R.C. 1954 1975
$ 19,995.59 $ 9,997.79  1976
21,700.17
10,850.08
1977
306,852.00
153,426.00
1978
132,843.00
66,421.00
The Commissioner also determined deficiencies in, and additions to, the Federal income taxes of B & D Manufacturing Company, Inc. (B & D), as follows: Additions to Tax
Tax Year Ended
Sec. 6653(b)
April 30
Deficiency
I.R.C. 1954
1977
$ 81,463.84 $ 47,394.07
1978
214,666.91
96,973.46  The issues for our decision are: (1) Whether Mr. and Mrs. Brown understated their business income for 1975 and 1976 and their dividend income for 1976, 1977, and 1978; (2) whether B & D understated its business income for its taxable years ended April 30, 1977, and April 30, 1978; (3) whether all the petitioners *328 are liable for the addition to tax for fraud under section 6653(b); and (4) whether the statute of limitations bars the Commissioner from assessing and collecting the deficiencies in, and additions to, tax for the years in issue; (5) whether Mrs. Brown qualifies as an innocent spouse under section 6013(e); and (6) whether the Commissioner is estopped from proceeding against the petitioners because of an earlier plea agreement involving Mr. Brown. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. At the time that petitions were filed in this case, petitioner Lawanda B. Brown resided in Marshall, Texas; Keith Wayne Brown and Kennith Ray Brown, acting as administrators of the Estate of Kenneth H. Brown, resided in Lamar County, Texas; and petitioner B & D maintained its place of business in Blossom, Texas. We shall sometimes refer to Kennith H. Brown as Mr. Brown and to Kennith H. and Lawanda B. Brown collectively as the Browns. The Browns and B & D filed Federal income tax returns for the years in issue with the Internal Revenue Service Center, Austin, Texas. During the years in issue, Mr. Brown was engaged in the business of manufacturing and installing *329 insulation. During 1975 and most of 1976, the business was organized as a sole proprietorship, using the trade name B & D Manufacturing. In November 1976, he incorporated the business, using the name B & D Manufacturing Co., Inc., and thereafter carried on the insulation business through such corporation. Mr. Brown owned all of the outstanding stock of B & D. He also served as president of the company during the years in issue. B & D reported its income using a tax year ending April 30. For convenience, we shall identify a taxable year by the calendar year in which it ended. During the years in issue, the Browns owned a house, barn, and other outbuildings on approximately 88 acres of land near Marshall, Texas (the Marshall property). Mr. Brown built an extension onto the house, which he used as a business office for B & D. In addition, he established B & D's insulation manufacturing plant in a separate building on the property. James R. Pruitt prepared all of the Browns' and B & D's income tax returns of the years in issue. Mr. Pruitt was aware that Mr. Brown was not familiar with bookkeeping or accounting procedures. For such reason, Mr. Pruitt instituted a simplified accounting *330 system for managing B & D's cash. He instructed Mr. Brown to deposit all business receipts into a business checking account and to make all disbursements by check from such account. Mr. Pruitt then asked Mr. Brown to furnish him with all deposit slips, cancelled checks, and bank statements associated with the account. Mr. Pruitt used such information to maintain B & D's accounting records and to prepare the tax returns for the Browns and for B & D. He used the cash method of accounting to record and report the revenues and expenses of the business. Mr. Pruitt did not instruct Mr. Brown on the accounting system, nor did he have any other business dealings with Mrs. Brown. Mr. Brown established B & D's business account at Security State Bank (Security) in Elysian Fields, Texas. B & D was the bank's largest depositor, and the bank's president, William Tucker, was familiar with the Browns' business activity. Both of the Browns made regular deposits to B & D's account at Security. Mr. Brown was primarily responsible for the operation of the business. He exercised complete control over B & D's manufacturing and sales functions and performed almost all of the company's managerial *331 and administrative tasks himself. He alone handled all the company's mail. Mrs. Brown occasionally worked in B & D's business office, where she wrote up sales invoices, answered the phone, and supervised the activity at the plant when Mr. Brown was away. On occasion, she wrote checks on, and made deposits to, B & D's account at Security. The Browns required a considerable amount of currency to operate their business. Mr. Brown often employed illegal aliens as day laborers, and such individuals had to be paid in cash. In addition, Mrs Brown was occasionally called upon to advance cash to truck drivers employed by B & D or to pay for repairs on the company's machinery. Mr. Brown used so much currency in operating B & D that he was listed by Security as being exempt from the usual reporting requirements regarding currency transactions. At the same time, B & D received a considerable amount of currency from its customers. Mr. Brown kept a substantial cash hoard in a safe in his home on the Marshall property. In 1977, Mr. Brown met with T. C. Tubb, who wanted to start his own insulation manufacturing and installation business. Mr. Tubb became interested in hiring Mr. Brown to supervise *332 the construction of an insulation manufacturing plant for him. During the course of a meeting with Mr. Tubb in B & D's office on the Marshall property, Mr. Brown attempted to impress Mr. Tubb with how profitable the insulation business was. Mr. Brown went into another room in the office for a few minutes and came back with two bags filled with currency. Mr. Tubb estimated that such bags contained up to several hundred thousand dollars in bills. Mr. Brown told him that such currency had been accumulated from the sales of insulation to contractors. In addition, Mr. Brown made a number of substantial purchases with cash. He had a heart-shaped swimming pool built on the Marshall property. Such pool cost $ 15,000 to build, of which $ 12,800 was paid in cash. Also, he paid $ 40,000 in cash for an 80-acre tract of land in Jefferson, Texas. Finally, he paid $ 42,000 in cash for a lake house and 4 acres on Lake of the Pines, which is also in Jefferson, Texas. The Browns were married in the mid-1950s. The last 10 years of their marriage were violent ones, in which Mr. Brown repeatedly physically abused his wife. On at least one occasion, he threatened to kill her. Although Mrs. Brown *333 was afraid of her husband, she stayed married to him because she had no other way to support herself and her seven children. Mr. Brown did not tell Mrs. Brown much about B & D's affairs. On those occasions when Mrs. Brown was present in B & D's office and someone came in to discuss the business with Mr. Brown, he told her to leave the room so that she could not hear what was being discussed. At times, Mr. Brown needed his wife's signature on a document. On such occasions, he merely gave the document to her to sign and did not give her an opportunity to read it. She always complied with his directions, for fear that he would beat her if she refused. In 1979, Mr. Brown forced Mrs. Brown out of the house in Marshall and instituted an action for divorce. Mrs. Brown subsequently filed a cross-action for divorce against her husband. The Browns were divorced shortly thereafter and entered into an agreement which divided the assets acquired during the marriage. Under such agreement, Mrs. Brown received the Marshall property and the contents of the buildings on such property, a tractor, a three-wheeled vehicle, a 1978 Lincoln automobile, certain personal property, and $ 42,500 in cash. *334 In addition, Mr. Brown assigned to her all his interest in a cause of action against Mr. Tubb. Mrs. Brown subsequently settled her claim against Mr. Tubb for approximately $ 15,000 to $ 17,000. Finally, Mrs. Brown received a promissory note with a principal amount of $ 15,000, and a 3.93-acre parcel of land in Marion County, Texas, acquired by Mr. Brown in 1978. In 1979, the Commissioner's special agent, Donald Copeland, was assigned to examine the petitioners' Federal income tax returns. In his examination, he reviewed Security's microfilmed bank records. He compared the deposit slips from B & D's account to revenue checks received from B & D's customers. Mr. Copeland was able to trace all of the revenue checks which were deposited to B & D's account to the deposit slips. However, Mr. Copeland discovered that a number of checks made payable to B & D were actually cashed, rather than deposited. Most of the cashed checks were endorsed to the order of B & D and contained the restrictive endorsement "For deposit only." Mr. Copeland found that Mrs. Brown endorsed in her own name and cashed three checks made payable to B & D. One of such checks was received in 1977 from Scott Service *335 Center in the amount of $ 368.75. Two of such checks were received in 1978, one from Chilton for $ 117.00 and one from Grogan Supply for $ 159.00. Mr. Copeland determined that Mr. Tucker, the president of Security, allowed checks which were made payable to, or restrictively endorsed to, B & D to be cashed by the Browns. Mr. Copeland also determined that Mr. Brown did not tell Mr. Pruitt that such checks were cashed, rather than deposited. After finding the evidence that the Browns were bypassing the accounting system devised by Mr. Pruitt, Mr. Copeland analyzed all the activity in B & D's account at Security. In preparing his analysis, he examined Security's microfilmed bank records relating to B & D's account and obtained copies of checks directly from B & D's customers. He compared such checks to B & D's deposit slips at Security, as shown on microfilm, and identified the business receipt checks made payable to B & D which had been cashed by the Browns. He concluded that such checks had not been included in income by either the Browns or by B & D. During the course of his examination, Mr. Copeland found evidence of the cash purchases made by the Browns. He asked Mr. Brown *336 to identify the source of the cash used to make such purchases. Mr. Brown replied that he had received $ 40,000 in cash as a loan from his mother. Mr. Copeland subsequently learned from others that Mr. Brown's mother lived on Social Security and did not have the resources to loan her son $ 40,000. In fact, she actually borrowed a small amount from Mr. Brown during her lifetime. After completing his examination, Mr. Copeland recommended that the Browns be prosecuted for income tax evasion with respect to their individual Federal income tax returns and B & D's corporate Federal income tax returns. In 1983, Mr. and Mrs. Brown were indicted on five counts of Federal income tax evasion, with respect to their individual income tax returns for 1976, 1977, and 1978 and with respect to B & D's corporate income tax returns for 1977 and 1978. As part of a plea agreement, Mr. Brown pled guilty to a charge under 26 U.S.C. sec. 7201 (1982) of evading Federal income tax with respect to the Browns' individual return for 1978. In exchange for his plea, the Government agreed to drop all other charges against him and all the charges against Mrs. Brown. As a result of his guilty plea, Mr. Brown *337 was sentenced to 2 years in prison on October 27, 1983. Because Mr. Brown was suffering from cancer at the time of his sentence, the court ordered him assigned to a medical facility operated by the Federal Government. He died in such facility while serving his sentence. The Commissioner's revenue agent Hershel Lumbley was assigned to examine, for civil purposes, the Federal Income tax returns filed by the Browns and by B & D for the years in issue. In his examination, he used the analyses developed by Mr. Copeland in the course of his criminal examination to calculate the income omitted from the petitioners' returns and to prepare his revenue agent's report. The Commissioner used Mr. Lumbley's report to issue separate notices of deficiency to Mr. and Mrs. Brown and to B & D. On March 28, 1984, he issued a notice to the Browns, in which he determined that they understated their business income in 1975 and 1976, during the time B & D was operated as a sole proprietorship, and that they received dividend income from B & D when the business was operated in corporate form. The Commissioner also determined that the Browns were liable for the addition to tax for fraud under section 6653(b). *338 On the same date, he issued a separate notice to B & D, in which he determined that the company was liable for deficiencies in, and additions to, tax for fraud. OPINION Each of the petitioners filed separate petitions in this case, and each presents different arguments with respect to the issues raised by the Commissioner's notices of deficiency. For convenience, we shall address separately each petitioner's liability for the deficiencies in, and additions to, tax determined by the Commissioner. We first consider whether the decedent, Kennith H. Brown, understated his income from 1975 through 1978. The Commissioner determined that Mr. Brown failed to report business income from B & D for 1975 and most of 1976, when such business was operated as a sole proprietorship. In addition, the Commissioner determined that Mr. Brown failed to report constructive dividends received from respondent after the company was incorporated in 1976. Mr. Brown's representatives have the burden of proving the Commissioner's determination to be erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.[3]
The record *339 reveals that Mr. Pruitt, who served as B & D's accountant and who prepared the tax returns for the petitioners for the years in issue, established a procedure for handling the company's cash flow. He directed Mr. Brown to deposit all business receipts into a business account established for B & D and to make all disbursements by drawing checks on such account. Mr. Pruitt then used the deposit slips, cancelled checks, and bank statements from such account to maintain the company's books and to prepare the petitioners' tax returns. The Commissioner's examination revealed that Mr. Brown circumvented the procedure established by Mr. Pruitt by cashing many business receipt checks at Security and keeping the proceeds. The Commissioner's special agent, Mr. Copeland, reviewed Security's microfilmed bank records and examined deposit slips, bank statements, and cancelled business receipt checks associated with B & D's account. Mr. Copeland was able to trace many such checks to the deposit slips and bank statements. He discovered that a number of checks made payable to B & D were actually cashed, rather than deposited. Most of the cashed checks were endorsed to the order of B & D and contained *340 the restrictive endorsement "For deposit only." Some of the cashed checks were endorsed "Ken Brown" or "Kennith Brown." Mr. Copeland also found three checks which were endorsed and cashed by Mrs. Brown. Mr. Copeland determined that Security allowed them to cash checks which were restrictively endorsed by B & D. After finding the evidence that the Browns were bypassing B & D's accounting system, Mr. Copeland conducted a careful analysis of all the activity in B & D's account at Security. In such analysis, he calculated the income diverted from B & D by the Browns. Based on such analysis and upon another examination performed for civil purposes, the Commissioner issued a notice of deficiency to the Browns, in which he determined that they failed to report such diverted income during the years in issue. Mr. Brown's representatives made no effort to refute the Commissioner's determinations of deficiency, either at trial or on brief. In fact, they stipulated before trial that they did not "contest the mechanical accuracy of the determination of tax deficiency" for the years in issue. For such reason, we hold that they have failed in their burden of proof with respect to the deficiencies *341 determined by the Commissioner. We next consider whether Mr. Brown is liable for the addition to tax for fraud under section 6653(b) for the years in issue. Section 6653(b) provides that if any part of an underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The Commissioner has the burden of proving by clear and convincing evidence that some part of an underpayment for each year is due to fraud. Sec. 7454(a); Rule 142(b). To establish fraud, the Commissioner must show that Mr. Brown intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). In 1983, Mr. Brown pled guilty to a charge of attempting to evade or defeat Federal income tax for 1978. Such plea is binding on Mr. Brown and estops him from denying that he filed a false tax return for 1978 with the intent to evade and prevent the collection of Federal income taxes due and owing by him in such year. See, e.g., Amos v. Commissioner,360 F2d 358, 359 (4th Cir. 1964), *342 affg. 43 T.C. 50 (1964); Tomlinson v. Lefkowitz,334 F.2d 262, 266 (5th Cir. 1964); Strachan v. Commissioner,48 T.C. 335, 339 (1967). For such reason, and since underpayments for tax for all years have clearly and convincingly been shown, we hold that Mr. Brown is liable for the addition to tax under section 6653(b) for 1978. As to the years 1975 through 1977, the existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, but rather must be established by some independent evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Since direct evidence of fraud is rarely available, circumstantial evidence may be considered. Spies v. United States,317 U.S. 492, 499 (1943); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud may properly be inferred where an entire course of conduct establishes the requisite intent. Rowlee v. Commissioner, supra.
Our conclusion may be reached after considering all the facts and circumstances surrounding the conduct of Mr. Brown's business, the transactions which gave *343 rise to the unreported income, and the preparation of the tax returns. See, e.g., Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969); Papineau v. Commissioner,28 T.C. 54, 57-58 (1957). After careful consideration of the record before us, we conclude that the Commissioner has met his burden of proving that Mr. Brown acted with the intent to defraud when he filed his Federal income tax returns for 1975, 1976, and 1977. We have found that Mr. Brown failed to report on his returns business receipts earned by B & D in 1975 and 1976. In addition, we have found that he diverted to his own use business receipts earned by B & D during 1976 and 1977. Mr. Brown knew that, under the accounting system devised by Mr. Pruitt, all business receipt checks were to be deposited into B & D's account at Security. Yet, he cashed a substantial number of such checks, kept the proceeds, and failed to tell Mr. Pruitt that he had done so, thereby insuring that such income went unreported. Such conduct is plain evidence of a fraudulent intent to evade taxes. United States v. Thetford,676 F.2d 170, 175 (5th Cir. 1982). He failed to report substantial *344 amounts of income in such manner for all the years in issue. Such a consistent pattern of underreporting income is also persuasive evidence of fraud. Holland v. United States,348 U.S. 121, 139 (1954); Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). The diversion of income plan involved the manipulation of large amounts of cash. One witness testified that during a conversation with Mr. Brown in B & D's office on the Marshall property, Mr. Brown went into another room in the office and returned in a few minutes with two bags filled with currency. The witness also testified that Mr. Brown told him that such currency had been accumulated from the sale of insulation. Such surreptitious cash transactions are a classic indicia of fraud. Spies v. United States,317 U.S. 492 (1943); United States v. Daniels,617 F.2d 146, 150 (5th Cir. 1980); UnitedStates v. Skalicky,615 F.2d 1117, 1120 (5th Cir. 1980). Mr. Brown was obviously a successful businessman. He must have known that the income diverted by him should have been reported on either his personal or B & D's tax returns. We hold that failing to report such income was *345 fraudulent and that his estate is liable for the addition to tax for fraud under section 6653(b) for the years in issue. See Commissioner v. Smith,285 F.2d 91, 98 (5th Cir. 1960), affg. a Memorandum Opinion of this Court; Roman v. Commissioner,245 F.2d 730, 734 (4th Cir. 1957), affg. a Memorandum Opinion of this Court. The next issue for our decision is whether B & D understated its business income for 1977 and 1978. The Commissioner determined that the company omitted income of $ 207,060.43 in 1977 and $ 404,056.09 in 1978. The petitioner bears the burden of proving the Commissioner's determination to be erroneous. Rule 142(a). The Commissioner's determination is based upon the analyses prepared by two of his agents. The agents determined that the checks made payable to B & D which were cashed by the Browns were properly reported as income by the company. However, the agents found that Mr. Brown's practice of cashing such checks caused such income to go unreported. B & D made no effort to challenge the agents' conclusions with respect to the company at trial or on brief. In fact, B & D stipulated before trial that it did not "contest the mechanical accuracy of the determination *346 of tax deficiencies for taxable years * * * 1977 and 1978 as stated in the statutory notice." For such reason, we conclude that petitioner B & D has failed to sustain its burden of proving the Commissioner's determinations to be erroneous. We next consider whether B & D is liable for the additions to tax for fraud, under section 6653(b), for 1977 and 1978. It is axiomatic that a corporation may act only through its officers and agents. Asphalt Industries, Inc. v. Commissioner,384 F.2d 229, 231 (3d Cir. 1967). It is also well settled that the fraudulent activities of a corporate officer or shareholder may be imputed to a corporation, if such individual so controls or dominates the corporation that it becomes, in effect, a creature of his will. See Ruidoso Racing Association, Inc. v. Commissioner,476 F.2d 502 (10th Cir. 1973); Asphalt Industries, Inc. v. Commissioner, supra.[4] *347 Therefore, in considering whether B & D is liable for the addition to tax for fraud, we look to the conduct of Mr. Brown, who served as the corporation's president during the years in issue. Mr. Brown was primarily responsible for every aspect of B & D's operation and exercised complete control over the company's manufacturing and sales functions. He performed almost all of the company's managerial and administrative tasks himself, leaving Mrs. Brown to handle only occasional clerical chores in B & D's office at the Marshall property. Thus, it is clear from the record that Mr. Brown dominated B & D's business affairs, and in our judgment, it is appropriate to impute his activities to the company. We have found as a fact that Mr. Brown diverted income from B & D during the years in issue by cashing business checks made payable to the company. We have also held that he engaged in such activity with the fraudulent intent to evade tax. Mr. Brown's failure to follow the bookkeeping practices established by B & D's accountant caused the company to underreport its income and to underpay its Federal income tax during the years in issue. We conclude that B & D is liable for the addition to tax for fraud under section 6653(b) for such years. We next consider whether Mrs. Brown is liable for the additions to tax for fraud, as determined by the Commissioner. Section 6653(b)(3) *348 provides that the fraud addition only applies with respect to a spouse who signed a joint return if some part of the underpayment in tax is due to that spouse's fraudulent conduct. Sec. 6653(b); Stone v. Commissioner,56 T.C. 213, 227 (1971). The Commissioner has the burden of proving such fraudulent conduct by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To establish fraud, the Commissioner must show that Mrs. Brown intended to evade taxes which she knew or believed to be owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). A finding of fraud requires a showing by the Commissioner that Mrs. Brown acted with an intent to evade taxes. Liability for the addition to tax for fraud requires that the Commissioner prove that she knew of the income diverted from B & D by Mr. Brown. See Sheckles v. Commissioner,T.C. Memo. 1984-289. After careful consideration of all the evidence before us, we conclude that the Commissioner has failed to sustain his burden of proving fraud as to Mrs. Brown. The core of Mr. Brown's fraudulent scheme involved cashing business receipt *349 checks made payable to B & D and retaining the proceeds. At trial, the Commissioner stipulated that Mrs. Brown endorsed in her own name and cashed only three business receipt checks made payable to B & D. Mrs. Brown testified that she cashed such checks because Mr. Brown was away, and she needed money to purchase parts for B & D's manufacturing plant or to give cash advances to the company's delivery men. She also testified that Mr. Brown did not let her use B & D's checkbook to write checks. On cross-examination, Mrs. Brown was asked why she did not simply write checks for such expenses on her personal account. She replied that she was not sure that she had sufficient funds to cover such checks in her personal account and that she did not want to risk an overdraft. We found Mrs. Brown to be a credible witness, and we accept her testimony on this point. Obviously the better accounting practice, and one which would have properly reported income, would have been for Mrs. Brown to deposit the three checks cashed by her and to write checks on B & D's account to cover any expenses which arose while Mr. Brown was away. However, the press of business required Mrs. Brown to cover the *350 expenses immediately, and she did not have access to B & D's checkbook to write checks. Moreover, since Mrs. Brown was never instructed by B & D's accountant regarding the company's accounting system, she may not have known that her actions caused B & D to underreport its income. A taxpayer's lack of knowledge of accounting or tax preparation is a factor which tends to negate fraudulent intent. See Marinzulich v. Commissioner,31 T.C. 487 (1958). The record reveals that Mr. Brown repeatedly abused his wife and forced her to yield to his demands. He chose to tell her almost nothing about B & D's business affairs. He forced her to sign documents, including tax returns, without reading or reviewing them. In our judgment, the Commissioner has failed to show that she knew about and participated in Mr. Brown's fraudulent scheme, or had reason to know about such scheme, and that she had the fraudulent intent to evade Federal income taxes during the years in issue. The next issue for our decision is whether Mrs. Brown is liable for the deficiencies in tax determined by the Commissioner. The record shows that she filed joint returns with her husband for all of the years in issue. As *351 a general rule, a husband and wife are jointly and severally liable for any tax or deficiency owed on a joint return. Sec. 6013(d)(3); Davenport v. Commissioner,48 T.C. 921, 926 (1967). Therefore, the entire tax liability on a joint return may be assessed against either spouse. Davenport v. Commissioner, supra.A spouse may avoid liability for the tax owed by showing that a joint return was not made ( Calhoun v. Commissioner,233 T.C. 4 (1954)), [5] or that her signature was obtained through duress or deception ( Brown v. Commissioner,51 T.C. 116 (1968)), or that she qualified for relief under the innocent spouse provisions (section 6013(e)). Mrs. Brown does not argue that joint returns were not filed for the years in issue or that she was deceived or coerced into filing such returns. However, she argues that she is not liable for the deficiencies because she qualifies as an innocent spouse under section 6013(e). Section 6013(e), as amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, provides that in order to obtain innocent spouse relief, the taxpayer *352 must show (1) that a joint return has been made for a taxable year; (2) that on such return, there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) that she did not know and had no reason to know of such substantial understatement when she signed the return; and (4) that after considering all the facts and circumstances, it would be inequitable to hold her liable for the deficiency in income tax attributable to such substantial understatement. See sec. 6013(e)(1); Purcell v. Commissioner,86 T.C. 228, 235 (1986), affd. 825 F.2d 470 (6th Cir. 1987). Grossly erroneous items are defined in part to mean "any item of gross income attributable to [the spouse not claiming innocent spouse status] which is omitted from gross income." Sec. 6013(e)(2)(A). Substantial understatement, for purposes of the innocent spouse provisions, "means any understatement * * * which exceeds $ 500. Sec. 6013(e)(3). We have held that Mr. Brown failed to report the income he diverted from B & D on the joint returns filed by the Browns for the years in issue. It is undisputed that such omission is a grossly erroneous item attributable to Mr. Brown and that *353 it produced a substantial understatement in tax. However, the Commissioner argues that Mrs. Brown failed to establish that she did not know or had no reason to know of the omitted income when she signed the returns. In determining whether Mrs. Brown knew, or had reason to know, of the omitted income, we must consider whether a reasonable person in her circumstances could be expected to know of the omissions at the time of the signing of the returns. Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). The record shows that Mr. Brown was primarily responsible for B & D's operation and that he told his wife almost nothing about the company's affairs. It also shows that Mrs. Brown was never instructed by Mr. Pruitt, B & D's accountant, regarding the company's accounting system. Further, it is clear that Mr. Brown often forced his wife to sign important documents, including tax returns, without allowing her the opportunity to review such documents. She always complied with his demands, for fear that she would be beaten if she refused. Under such circumstances, we are satisfied that Mrs. Brown did not know, or had no reason to know, of the omissions from income during the years in issue. *354 The Commissioner finally argues that it would not be inequitable to hold Mrs. Brown liable for the deficiencies in tax resulting from the omissions from income. Mrs. Brown has the burden of proving that such a holding would be inequitable. Rule 142(a). Whether it is inequitable to hold Mrs. Brown liable for the deficiencies in tax is to be determined by an examination of all the facts and circumstances in this case. Sec. 1.6013-4(b), Income Tax Regs. Mrs. Brown was divorced from her husband in 1979. The Commissioner relies on the fact that after the divorce Mrs. Brown received property acquired during her marriage, pursuant to the terms of a settlement agreement executed by the couple. [6] *356 Under such agreement, she received cash, a promissory note, and a claim against a creditor of Mr. Brown, totaling approximately $ 72,500. All of such property was accumulated during the years in issue. Under such agreement, Mrs. Brown also received the Marshall property. While such property was acquired before 1975, Mr. Brown made substantial improvements on it during the years in issue, including building a swimming pool at a cost of $ 15,000. In addition, Mrs. Brown received 3.93 acres of *355 land in Marion County, Texas, which her husband acquired in 1978. Finally, the settlement agreement transferred to Mrs. Brown a 1978 Lincoln automobile. Although we have no evidence as to the value of the Marion County land, it is clear that Mrs. Brown received some property as a result of the divorce. However, the Commissioner is claiming deficiencies of nearly $ 500,000 in this case, and he seeks to collect such deficiencies from Mrs. Brown by reason of the property which she acquired following the divorce. The property acquired by her is utterly disparate when compared with the deficiencies claimed by the Commissioner, and under such circumstances, we conclude and hold that it would be inequitable to hold Mrs. Brown liable for such deficiencies. See Dakil v. United States,496 F.2d 431, 433 (10th Cir. 1974); Miriani v. Commissioner,T.C. Memo. 1976-122. Consequently, we hold that Mrs. Brown does qualify as an innocent spouse under section 6013(e). The petitioners next argue that the statute of limitations bars the Commissioner from assessing the determined deficiencies and additions to tax against them. As a general rule, any deficiency or addition to tax must be assessed by the Commissioner within 3 years of the due date of the return in issue, or of the date on which such return is actually filed, if later. Sec. 6501(a). An exception to the general rule arises when a false or fraudulent return is filed with the intent to evade tax, in which case the tax may be assessed at any tie. Sec. 6501(c). In this case, the notices of deficiency were mailed to the petitioners more than 3 years after the returns were filed, and the Commissioner concedes that section 6501(a) serves to bar the assessment of the deficiencies and additions unless such returns were false or fraudulent. We have found that both Mr. Brown's estate and B & D are subject to the addition to tax for fraud. Therefore, section 6501(c) permits the Commissioner to assess the determined deficiencies and additions *357 to tax against them. Although the statute of limitations does not prevent the assessment of the deficiencies against Mrs. Brown ( Ballard v. Commissioner,740 F.2d 659, 662-663 (8th Cir. 1984), affg. on this issue a Memorandum Opinion of this Court; Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970)), [7] she is not liable for such deficiencies because we have found her to be an innocent spouse. She is also not liable for the additions to tax because we have found that she did not participate in the fraudulent conduct. The final issue for our decision is whether the Commissioner is estopped from proceeding against the petitioners because of the plea agreement involving Mr. Brown. The Browns were indicted in 1983 for income tax evasion with respect to their individual Federal income tax returns for 1976, 1977, and 1978 and with respect to B & D's tax returns for 1977 and 1978. On May 28, 1983, Mr. Brown entered into a plea agreement, whereby he pled guilty to one count of evading Federal income tax with respect to the Browns' individual return for 1978. In exchange for his plea, the Government agreed to drop all remaining charges *358 against him and all the charges brought against Mrs. Brown. The petitioners claim that, because of such plea agreement, the Commissioner is estopped from collecting the deficiencies and additions to tax determined by him. It is well settled that the Commissioner is not estopped from collecting deficiencies in tax and associated civil sanctions from taxpayers who have been convicted of, or pled guilty to, a charge of criminal tax evasion. See Helvering v. Mitchell,303 U.S. 391 (1938); Rowlee v. Commissioner,80 T.C. 1111 (1983). [8] The Supreme Court has held, "Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." Helvering v. Mitchell,303 U.S. at 401. This Court has stated that "Criminal sanctions contain a punitive element while civil sanctions act primarily as a safeguard for the protection of the revenue and to reimburse the Government for expenses in investigation and the loss resulting from the taxpayer's fraud. See Friedman v. Commissioner,T.C. Memo. 1985-453, 50 T.C.M. 927, 928, 54 P-H Memo T.C. *359 par. 85,453 at 2033. For such reasons, we conclude that the Commissioner is not estopped by Mr. Brown's plea agreement from proceeding against the petitioners for the deficiencies and additions to tax determined for the years still open. In docket Nos. 21141-84 and 21145-84, decisions will be entered for the respondent. In docket No. 21142-84, decision will be entered for the petitioner.
Footnotes
1. Cases of the following petitioners have been consolidated herewith: Lawanda B. Brown, docket No. 21142-84; and B & D Manufacturing Company, Inc., Docket No. 21145-84. ↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
3. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure. ↩
4. See also Greater Display & Wire Forming, Inc. v. Commissioner,T.C. Memo. 1988-231; M. J. Laputka & Sons, Inc. v. Commissioner,T.C. Memo. 1981-730. 5. See also Wiener v. Commissioner,T.C. Memo. 1971-56; Wills Corp. v. Commissioner,T.C. Memo. 1969-36↩. 6. Although sec. 6013(e) as amended in 1984 no longer requires an assessment of whether a spouse benefitted from an erroneous item, Congress intended that benefits received should continue to be taken into account. H. Rept. 98-432 (Part 2), on H.R. 4170 (Tax Reform Act of 1984), at 1502 (1984). See also Purcell v. Commissioner,86 T.C. 228, 241 (1986), affd. 826 F.2d 470↩ (6th Cir. 1987). 7. See also Allen v. Commissioner,T.C. Memo. 1986-125↩. 8. See also Friedman v. Commissioner,T.C. Memo. 1985-453↩.