**Lucille E. KISTNER f/k/a/ Lucille E. Weasel, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 93–4008.

United States Court of Appeals, Eleventh Circuit.

Jan. 31, 1994.

As Amended April 19, 1994.

Jerald S. Beer, West Palm Beach, FL, for petitioner-appellant.

Gary Allen, Lead Counsel, Sara S. Holderness, Richard Farber, Tax Div., Dept. of Justice, Washington, DC, for respondent-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and FRIEDMAN *, Circuit Judge.

HATCHETT, Circuit Judge:

Applying section 6013(e) of the Internal Revenue Code, we reverse the United States Tax Court's decision denying "innocent spouse" status to the appellant.

## FACTS

On December 5, 1943, Lucille Kistner and George W. Weasel, Jr. married. In 1954, Weasel organized a business known as Tem-Cole to market radishes, and served as its president, controlling all aspects of the business. Kistner occasionally worked in the radish processing plant in McClure, Ohio, but never involved herself in the financial or management aspects of the company.

In 1956, Weasel built a residence for his family on ten acres in McClure, Ohio, across the highway from Tem-Cole's radish processing plant. Sometime thereafter, Weasel constructed a swimming pool, tennis court, clubhouse, and airplane landing strip adjacent to the residence on a separate parcel of property.

In 1957, when Weasel incorporated Tem-Cole, Weasel received 59,754 shares. Of the 60,000 shares originally issued, Kistner received 156 shares, and Weasel's father received 90 shares.

In 1977, Kistner and Weasel were divorced. The terms of the property settlement agreement awarded Kistner $225,000 each year as "guaranteed income," consisting of $100,000 cash dividends, which the parties anticipated Tem-Cole's stock to pay, and $125,000 in cash. Additionally, Kistner received the McClure residence together with

---

* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

the clubhouse, swimming pool, and tennis court.

On March 19, 1977, Weasel conveyed to Kistner his interest in the McClure residence. On October 17, 1978, Kistner entered into an amended property settlement agreement under which she agreed to convey her ownership interest in the McClure residence to Weasel and convey her ownership interest in the adjacent property (swimming pool, tennis court, clubhouse) to Tem–Cole. Weasel agreed to convey to Kistner a residence of comparable value not to exceed $250,000. Kistner and Weasel continued to live at the residence in McClure, and Weasel did not convey a comparable residence as agreed to in the amended property settlement agreement.

In 1979, Kistner and Weasel remarried and lived together in Atlantis, Florida, during the winter radish growing season. During the 1979 and 1980 summer growing seasons, Kistner and Weasel lived at the McClure residence. During this period, Weasel engaged in several business activities, and Kistner owned interests in real estate limited partnerships from which she received income in amounts of $11,494 in 1979 and $17,229 in 1980.

In 1980, Weasel formed the George Weasel Consolidated Holding Company, Inc. for the purpose of owning and managing Tem–Cole as well as his other business interests.

In 1979, 1980, and early 1981, Kistner enjoyed an affluent lifestyle with Weasel providing her with a monthly cash allowance of $15,000. In 1979 and 1980, Kistner received new Mercedes automobiles and accompanied Weasel on trips on Tem–Cole's airplanes. Fred and Elise Robichaud who lived near the Weasel's residence in Florida during the winter growing season and near the McClure residence during the summer growing season, worked at the Kistner residence as handyman and maid.

In November, 1983, Kistner and Weasel were divorced for a second time. A property settlement agreement provided that Kistner would receive $4,280,000 as a lump sum alimony payment.

On February 15, 1983, Kistner filed a lawsuit against Weasel on behalf of herself and other shareholders of Tem–Cole, claiming that Weasel "was depleting the property of Tem–Cole by, among other things, drawing an excessive salary, using funds of Tem–Cole to pay for personal travel...." Kistner and Weasel signed and filed joint federal income tax returns for 1979 and 1980.

## PROCEDURAL HISTORY

Upon audit, the Commissioner determined that Kistner and Weasel received additional income of $1,142,681 in 1979 and $1,386,134 in 1980 relating to "unreimbursed payments by Tem–Cole for Kistner's and Weasel's personal benefit and to use by Kistner and/or by Weasel of Tem–Cole's corporate property...." The Commissioner treated this additional income as "constructive dividends from Tem–Cole." The Commissioner also disallowed Weasel's deductions for losses associated with his other business activities.

The Tax Court determined that Kistner and Weasel had received significant constructive dividends through Tem–Cole's payment of their personal expenses and through personal use of Tem–Cole's property not reflected on the joint federal income tax returns for 1979 and 1980. The court held Kistner jointly and severally liable "under section 6013(d)(3) for the income tax deficiencies arising from income attributable either to herself or to Mr. Weasel during the years in issue" unless the innocent spouse provisions of section 6013(e) applied. The Tax Court then concluded that Kistner did not qualify as an innocent spouse under section 6013(e)(2), stating:

[Kistner] may have been ignorant of the precise tax implications of the payments being made by Tem–Cole on her and Mr. Weasel's behalf, but she was or should have been aware of the payments, and she had a duty to make further inquiry as to the proper tax treatment thereof.

Having found that [Kistner] does not meet the second requirement of section 6013(e)(2), we need not address the third requirement.

On September 23, 1987, Kistner filed a petition in the United States Tax Court seeking review of IRS's assessed deficiencies in her federal income taxes for 1979 and 1980. On September 11, 1989, Kistner filed another petition in the Tax Court seeking review of IRS assessed deficiencies in her federal income taxes for 1973 and 1976. The parties stipulated that the Tax Court's resolution of the "innocent spouse issue" in the first case governed the same issue in the second case. On September 23, 1991, the Tax Court issued its memorandum opinion determining that Kistner failed to qualify as an innocent spouse, under 26 U.S.C. § 6013, and "was jointly and severally liable for the resulting income tax deficiencies." On October 28, 1991, Kistner filed a motion for reconsideration, and the Tax Court denied the motion on May 15, 1992. On October 1, 1992, the Tax Court entered its decision with respect to taxable years 1979, 1980, 1973 and 1976. Thereafter, on December 31, 1992, Kistner filed timely notices of appeal.

## CONTENTIONS

Kistner contends the Tax Court committed clear error in finding that she did not meet the requirements for innocent spouse relief under section 6013(e)(1)(C). Kistner asserts that the Tax Court erred when it added a new factor not previously recognized by the courts, specifically, that significant net losses from partnership investments giving rise to deductions should have alerted Kistner to omitted income under the Commissioner's constructive dividend theory. Kistner argues that the Tax Court further erred in finding that her failure to prove duress or coercion in the execution of the tax returns precluded innocent spouse relief. Kistner asserts that the Tax Court also erred when it determined that she knew of the misuse of the corporate property which gave rise to the constructive dividends.

The Commissioner contends that the Tax Court's conclusion that Kistner knew or had reason to know of the unreported constructive dividends is correct. Further, even if this court concluded that the Tax Court committed clear error in finding that Kistner knew or had reason to know of the construc-

tive dividends, she still would not qualify for relief under section 6013(e) because she is unable to establish that it is inequitable to hold her liable for the taxes.

## ISSUE

Whether the Tax Court correctly concluded that taxpayer did not qualify for relief from joint liability for federal income taxes for the years 1979 and 1980 as an "innocent spouse" under Internal Revenue Code § 6013(e).

## DISCUSSION

Married taxpayers filing joint income tax returns are afforded a lower income tax rate and are jointly and severally liable for the tax due on their combined incomes. Because this joint and several liability often produced hardships for an "innocent spouse" whose marriage partner received substantial unreported income and then disappeared, leaving the spouse to pay a large deficiency, in 1971 Congress enacted section 6013(e), as amended in 1984, which provides as follows:

(e) Spouse relieved of liability in certain cases—

(1) in general—under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liabili-

ty is attributable to such substantial understatement.

The parties stipulated that Kistner satisfied subsections (A) and (B), leaving sections (C) and (D) in dispute.

■ A spouse has "reason to know" if a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted. *Stevens v. Commissioner of Internal Revenue*, 872 F.2d 1499, 1505 (11th Cir.1989). The test establishes a "duty of inquiry" on the part of the alleged innocent spouse. *Stevens*, 872 F.2d at 1505. The courts have recognized several factors that are relevant in determining the "reason to know," including (1) the alleged innocent spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of income, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. *Stevens*, 872 F.2d at 1505. This court has held that the alleged innocent spouse's role as a homemaker and complete deference to the other spouse's judgment concerning the couple's finances, standing alone, are insufficient to establish that a spouse had no "reason to know." *Stevens* (citing *Shea v. Commissioner of Internal Revenue*, 780 F.2d 561, 556 (6th Cir. 1986)).

In this case, the Tax Court found that Kistner "was not a high school graduate and she was not significantly involved in the family business or family finances." Thus, Kistner satisfied the first two factors relevant in "reason to know" analysis.

■ The Tax Court denied Kistner innocent spouse protection finding that she failed to carry her burden as to the third element of section 6013(e)(1), which requires a spouse to establish that the spouse did not know or have reason to know of the substantial understatement of income. The Commissioner points to several expenditures to indicate the lavish lifestyle Kistner lived to prove she had "reason to know," including a $15,000 per month allowance; the purchase of new Mercedes automobiles in 1979 and 1980; vacations in Europe; attending horse races all over the country; having a full-time maid and gardener; and maintaining two homes, one with a clubhouse, swimming pool, and tennis court adjacent to it. The Tax Court seemed to determine lavishness based on the dollar value of the expenditure rather than evaluating the rarity of the expense. *Stevens*, 872 F.2d at 1505. We have held that one person's luxury may be another's necessity, and the lavishness of an expense must be measured from each family's relative level of ordinary support. *Sanders v. United States*, 509 F.2d 162, 168 (5th Cir.1975). The record indicates that Kistner received a substantial sum of money per month as alimony prior to her remarriage to Weasel in 1979. Kistner's testimony reflects that she attended horse races with Weasel infrequently during the years in question, a couple of times a year at most. Additionally, Kistner indicated that she did not know for sure who paid the maid and the gardener, and as far as she was concerned, they were Weasel's employees, and he paid them. Kistner did not suddenly acquire her homes during the years in question. Finally, the clubhouse, swimming pool, and tennis courts belonged to the corporation, and no evidence indicates that Kistner had reason to suspect that the corporation was not being reimbursed. Thus, the expenditures Kistner made, while indicating affluence, did not show a sudden increase that would qualify as a lavish increase from the level of ordinary expenses.

This court has addressed the innocent spouse issue in the following cases, determining that the taxpayer did not qualify for innocent spouse relief: *Stevens v. Commissioner of Internal Revenue*, 872 F.2d 1499 (11th Cir.1989) (presence during business conversations, access to business records, discussions with husband regarding investments, and husband's evasiveness when questioned about tax returns should have put the taxpayer on notice); *Bokum v. Commissioner of Internal Revenue*, 992 F.2d 1132 (11th Cir.1993) (mistake about the operation of the tax law where the omission did not result from any concealment, overreaching,

or any other wrongdoing on behalf of the other spouse); *Gordon v. United States,* 757 F.2d 1157 (11th Cir.1985) (summarily stated that none of the section 6013(e) exceptions apply). Binding cases in the Fifth Circuit that address the innocent spouse issue allowing innocent spouse relief are: *Allen v. Commissioner of Internal Revenue,* 514 F.2d 908 (5th Cir.1975) (amount omitted from gross income which is properly includable exceeded twenty-five percent of the amount of gross income stated in the return); *Sanders v. United States,* 509 F.2d 162 (5th Cir.1975) (fairly high and generally improving standard of living, limited participation in financial affairs of the family, impaired cognitive facilities, and complexity of spouse's finances established taxpayer had no reason to know); *Cain v. Commissioner of Internal Revenue,* 460 F.2d 1243 (5th Cir.1972) (wives relieved of liability because the amount omitted from gross income exceeded twenty-five percent of the gross income reported and the wives neither knew nor had reason to know of the omissions).

Fifth Circuit cases disallowing innocent spouse relief include: *Parker v. United States,* 524 F.2d 479 (5th Cir.1975) (holding wife would have benefitted from the husband's fraudulent omission of income had the fraud not been detected in this case); *Allen v. Commissioner of Internal Revenue,* 514 F.2d 908 (5th Cir.1975) (spouse failed to show omission from gross income attributable to her husband exceeded twenty-five percent of the gross income stated on the return for the year in question).

■ Kistner's situation in this case is distinguishable from *Stevens* because the evidence in this case showed no involvement in the corporation's financial affairs; Weasel deliberately denied Kistner access to the financial records and threatened violence if she questioned the tax returns. This case is similar to *Sanders* in that the family had maintained a high standard of living; Kistner had no involvement in the financial affairs of the business; and she feared physical violence if she challenged any of Weasel's demands.

■ This court has held that the innocent spouse's complete deference to the husband's

judgment concerning the couple's finances, standing alone, is insufficient to establish that the spouse had no reason to know. Nevertheless, where physical or mental abuse is shown, even when the abuse does not rise to the level of coercion, a basis may exist for allowing innocent spouse relief. The Tax Court in *Brown* stated:

> The record reveals how Brown repeatedly abused his wife and forced her to yield to his demands.... He forced her to sign documents, including tax returns, without reading or review of them....

> Mrs. Brown does not argue that joint returns were not filed for the years in issue or that she was deceived or coerced into filing such returns. However, she argues that she is not liable for the deficiency because she qualifies as an innocent spouse under section 6013(e)....

> We hold that Mrs. Brown does qualify as an innocent spouse under section 6013(e).

*Brown v. Commissioner,* 55 T.C.M. (CCH) 1249, 1255, 1988 WL 70611 (1988). The record indicates a history of physical abuse between Kistner and Weasel over many years. The Tax Court states that while Kistner "may have been fearful of angering Mr. Weasel, she does not claim that she was coerced into signing the return or that she did so under duress." As previously stated, a taxpayer may still qualify for the innocent spouse exemption where physical abuse has existed over a number of years. *Brown,* 55 T.C.M. at 1255.

Before the Tax Court, the Commissioner argued that Kistner should be liable for the deficiency because she knew of the constructive dividends Weasel had received through his failure to reimburse the company for personal expenses the company paid. The Tax Court found that a cursory review of the joint federal income tax returns reflecting significant net losses would and should have alerted Kistner to make further inquiry, especially because of the lavish personal expenditures. Further, the Tax Court found that Kistner acknowledged she knew of Weasel's misuse of company property through the allegations contained in her 1983 shareholder lawsuit. Review of the record reveals that in the lawsuit Kistner merely alleged that:

It is my information and belief the Defendant, George E. Weasel, has managed and controlled and presently manages and controls Defendant's George Weasel Consolidated Holding Company, Inc., and Tem-Cole, Inc., and is a selfish, oppressive, tyrannical, fraudulent and wasteful man and without regard for the interest of the remaining owners....

This language does not show Kistner had knowledge that Weasel used company property for personal use at the time she signed the returns. Further, Kistner's testimony in the Tax Court does not show knowledge during the years in question.

Based upon a review of the Tax Court findings and a review of the record, we hold that a reasonably prudent taxpayer under the Kistner circumstances: living an affluent life for many years, fearful of physical violence, and uninvolved in the financial affairs of the business, at the time of signing the return could not be expected to know that the tax liability stated was erroneous, or that further investigation was necessary.

This decision is consistent with decisions of our sister circuits. *Erdahl v. Commissioner of Internal Revenue,* 930 F.2d 585 (8th Cir. 1991) (mere knowledge of an investment is insufficient to support a conclusion that a spouse knew or had reason to know the deduction of partnership loss would give rise to a substantial understatement); *Price v. Commissioner of Internal Revenue,* 887 F.2d 959 (9th Cir.1989) (spouse could not be expected to know return contained a substantial understatement where she had a limited involvement in the family's financial affairs; where the husband maintained a separate checking account for his investments; where no unusually lavish expenditures were made compared to their past levels of income, standard of living, or spending patterns; where the husband misled the wife regarding their finances; and where the husband took advantage of her lack of understanding of financial affairs. On the other hand, wife had a duty to inquire, due to size of the deduction in relation to reported income, in light of the fact she knew of the existence of the investment and its rather unusual nature); *Purcell v. Commissioner of Internal Revenue,* 826 F.2d 470 (6th Cir.1987) (spouse not entitled to relief from deficiency resulting from the income derived from covenant not to compete where spouse participated in negotiation of non-competition provision of contract). The Tax Court did not decide whether Kistner met the requirements of 26 U.S.C. § 6013(d); therefore, we will not address the merits of that claim.

## CONCLUSION

We reverse the Tax Court decision denying Kistner innocent spouse status on the basis that she failed to qualify under section 6013(e)(1)(C). Because the Tax Court declined to rule on whether Kistner satisfied section 6013(e)(1)(D), we remand to the Tax Court for a determination on that issue.

**REVERSED and REMANDED.**