CECIL H. COOK, III AND SALLYANNE M. COOK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cook v. Commissioner
Docket No. 4086-94
United States Tax Court
T.C. Memo 1995-247; 1995 Tax Ct. Memo LEXIS 249; 69 T.C.M. (CCH) 2822; June 7, 1995, Filed *249 Decision will be entered against petitioner Cecil H. Cook, III in the amounts agreed to by the parties. The decision will reflect that there are no deficiencies or penalties due from petitioner Sallyanne M. Cook. Cecil H. Cook, III and Sallyanne M. Cook, pro se. For Respondent: Michael D. Zima POWELL
POWELL
MEMORANDUM FINDINGS OF FACT AND OPINION POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' 1990 and 1991 Federal income taxes in the amounts of $ 5,751 and $ 7,253, respectively, and accuracy-related penalties pursuant to section 6662(a) in the amounts of $ 1,150 and $ 1,450.60, respectively. Petitioner Sallyanne M. Cook (petitioner) resided at Neptune Beach, Florida, and petitioner Cecil H. *250 Cook, III (Mr. Cook) resided at Atlantic Beach, Florida, when their petition was filed. Following concessions by respondent, the deficiencies were reduced to $ 4,421 and $ 7,065 for 1990 and 1991, respectively, and the penalties were reduced accordingly. Petitioners concede the revised deficiencies and penalties. The sole issue is whether petitioner is an innocent spouse under section 6013(e). FINDINGS OF FACT During the years at issue, petitioner taught elementary school in Duval County, Florida. Petitioner held an undergraduate degree in education from Butler University in Indianapolis, Indiana, and a graduate degree in Education from the University of Central Florida in Orlando, Florida. Petitioner married Mr. Cook in 1973, and they generally had a middle income standard of living. They had two children. They did not take vacations during the years at issue, and they did not incur lavish expenses. Petitioner drove a 1976 Buick Park Avenue during the years at issue, and at some point during this time Mr. Cook bought a Ford Explorer (purchased without consulting petitioner). Mr. Cook worked in the insurance business as an independent agent during the years at issue. Petitioner *251 was not involved in his business in any sense, and he refused to discuss the business with petitioner. Petitioner maintained a separate checking account into which her salary was deposited and from which she paid most of the household bills. Mr. Cook maintained a checking account for his business. Petitioner had no authority over that account, and the bank statements were sent to Mr. Cook's business address. Mr. Cook generally paid the mortgage, cable television bill, and car insurance. He occasionally provided lunch money for their children; otherwise, however, he contribute little towards family support. Petitioner and Mr. Cook attended church regularly. Petitioner occasionally put money in the collection plate at her church, and she donated small amounts to charitable organizations during the years at issue. During 1991 petitioner took a class in "business modeling", hoping she would be able to earn some extra money working for department stores during the holiday season. Tuition was $ 600, and petitioner had other expenses relating to the class. When the 1991 tax return was being prepared, Mr. Cook asked petitioner to give him her records relating to the course. Mr. *252 Cook handled their tax returns without consulting petitioner, and he kept all of their financial records at his office. Terence N. Thurson (Thurson), a certified public accountant, prepared petitioners' 1990 and 1991 joint returns, in consultation with Mr. Cook but not petitioner. Mr. Cook presented the tax returns to petitioner on the day the returns were due as she was on her way out to work and pressured her into signing the returns. When she raised questions about the returns, he assured her that they were accurately prepared by a certified public accountant. Petitioner believed that the returns were prepared correctly. Petitioners' 1990 Federal income tax return reflected a tax liability of $ 3,132, with $ 2,767 withheld from petitioner's wages and an estimated tax payment in the amount of $ 500. An overpayment in the amount f $ 135 was applied to their 1991 estimated tax. Their 1991 Federal income tax return reflected a tax liability of $ 174, with $ 2,680 withheld from petitioner's wages and the $ 135 estimated tax payment from 1990. An overpayment in the amount of $ 2,641 was refunded to petitioners. Petitioner, however, did not know that there had been a refund for *253 1991. The understatement in tax for the 1990 taxable year was due to the disallowance of expenses on Schedule C for Mr. Cook's insurance business and the disallowance of charitable deductions claimed on Schedule A. With regard to the deficiency for the taxable year 1991, the understatement was due to the disallowance of deductions claimed for Schedule C business expenses of Mr. Cook, a business bad debt relating to Mr. Cook, the expenses of petitioner's modeling lessons, and charitable contributions claimed on Schedule A. Petitioners subsequently separated and divorced. When they separated, Mr. Cook withdrew amounts from a savings account that petitioner had set aside for their children's education. Mr. Cook also took the 1976 Buick Park Avenue automobile that petitioner had been driving, as it was purchased in his name. Mr. Cook moved out of the residence, and petitioner was unable to pay the mortgage. Petitioner sold the house, but the proceeds were used to pay the mortgage debt. Petitioners divided the household belongings between themselves, and the divorce agreement obliged Mr. Cook to make support payments for the children. These payments were not routinely made. OPINION
*254 Spouses who file joint tax returns are jointly and severally liable for the taxes due on their income and any related additions to tax. Secs. 6013(d)(3), 6665(a)(2). Petitioner argues that she is not liable for the deficiencies and penalties because she is an innocent spouse under section 6013(e). To prevail, petitioner must prove that (a) joint returns were filed for the years in issue; (b) there are substantial understatements of tax attributable to grossly erroneous items of the other spouse on the returns; (c) she did not know or have reason to know of the substantial understatements when signing the returns; and (d) it is inequitable to hold her liable for the deficiencies attributable to the substantial understatements. Sec. 6013(e)(1). Failure to meet any of the requirements precludes a taxpayer from qualifying as an innocent spouse. Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310; Estate of Jackson v. Commissioner, 72 T.C. 356, 362 (1979). In view of the Congressional purpose of guarding against injustice to innocent *255 taxpayers, we do not read the innocent spouse exception too narrowly. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975). Petitioners filed joint returns for the years at issue, and we are satisfied that the understatements are attributable to grossly erroneous items created by the imaginative accounting practices of Messrs. Cook and Thurson. We must decide, therefore, whether petitioner knew or had reason to know of the substantial understatement when she signed the returns and, if not, whether it would be inequitable to hold her liable for the deficiencies. We first note that we found petitioner's testimony to be credible and candid. We cannot say the same for the testimony of Mr. Cook. Petitioner did not have actual knowledge of the understatements reported on the returns, and respondent did not present any credible evidence tending to show otherwise. If, however, a spouse knows enough facts to be put on notice of the possibility of an understatement, he or she has a duty to inquire further. Guth v. Commissioner, 897 F.2d 441, 444-445 (9th Cir. 1990), affg. T.C. Memo. 1987-522. *256 A spouse's duty to inquire may be triggered if he or she perceives that anything is wrong with the tax return or that the other spouse is being deceptive. Stevens v. Commissioner, 872 F.2d 1499, 1507 (11th Cir. 1989), affg. T.C. Memo. 1988-63 (where the taxpayer's husband refused to let her review their returns or to answer her questions about their returns, triggering a duty to inquire further). Failure to inquire may cause knowledge of the understatement to be imputed to the taxpayer. McCoy v. Commissioner, 57 T.C. 732, 734-735 (1972); see also Stevens v. Commissioner, supra at 1507; Adams v. Commissioner, 60 T.C. 300, 303 (1973). A taxpayer may satisfy the duty to inquire by taking reasonable steps to determine the accuracy of the return, such as by questioning his or her spouse and receiving a plausible explanation. In Estate of Killian v. Commissioner, T.C. Memo. 1987-365, we held that the taxpayer took reasonable steps to check the accuracy of the tax return by questioning her husband about *257 it, who assured her that a reputable C.P.A. had prepared it. This is identical to the situation here, and we find that petitioner did not have actual or constructive knowledge of the understatements. We also note that whether petitioner had reason to know of the substantial understatements depends on whether a reasonable person under the circumstances of the taxpayer could be expected to know that erroneous deductions had been made at the time the returns were signed. Kistner v. Commissioner, 18 F.3d 1521 (11th Cir. 1994), revg. T.C. Memo. 1991-463; Stevens v. Commissioner, T.C. Memo. 1988-63, affd. 872 F.2d 1499, 1505 (11th Cir. 1989). Significant factors in this decision are petitioner's intelligence and education, her level of involvement in the financial transactions that gave rise to the deductions, her husband's openness concerning these transactions, and the presence of lavish or unusual expenditures compared to her past standard of living. Stevens v. Commissioner, 872 F.2d at 1505-1506. The above factors weigh heavily *258 in favor of petitioner. Although she has a master's degree, she was not trained in financial matters. While the deduction for the "business modeling" is attributed to her activity, she had no involvement in the classification of that activity as giving rise to deductible expenses. Rather, the deductions were a result of Thurson's characterization. Further, petitioner did not have any lavish or unusual expenditures. She had no reason to know of the understatements of tax. In deciding whether it is inequitable to hold a spouse liable for a deficiency, we take into account whether the purported innocent spouse significantly benefited beyond normal support, either directly or indirectly, from the erroneous deductions. See Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); sec. 1.6013-5(b), Income Tax Regs.; see H. Rept. 98-432 (Pt. 2), at 1502 (1984). Normal support is not a significant benefit for purposes of deciding whether it is inequitable to hold petitioner liable for the deficiencies. Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); *259 sec. 1.6013-5(b), Income Tax Regs. Normal support is determined by the circumstances of the taxpayers. Sanders v. United States, 509 F.2d at 168; Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989); Flynn v. Commissioner, 93 T.C. 355, 367 (1989). Petitioner's lifestyle was not lavish, and it did not improve during the years at issue. We do not believe that she benefited at all from the tax savings. As far as we can ascertain from the record, petitioner made payments through wage withholding that approximated her individual tax liability. Rather, it is apparent that Mr. Cook diverted those withheld funds to his own use, and that petitioner did not benefit from the refund. Based on the record of this case, we conclude that it would be inequitable to hold petitioner liable for the deficiencies and penalties under section 6662(a). For the foregoing reasons, we hold that petitioner qualifies as an innocent spouse under section 6013(e). Decision will be entered against petitioner Cecil H. Cook, III in the amounts agreed to by the parties. The decision will reflect that there are *260 no deficiencies or penalties due from petitioner Sallyanne M. Cook. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩