T.C. Memo. 1996-55

UNITED STATES TAX COURT

LINDSEY C. NELSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 733-95.                    Filed February 14, 1996.

Lindsey C. Nelson, pro se.

<u>Amy Dyar Seals</u>, for respondent.

MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties pursuant to section 6662(a)[1] in the following amounts:

---

[1]    Section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 1991 | $4,599 | $920 |
| 1992 | 5,879 | 1,176 |
| 1993 | 5,641 | 1,128 |

At the time the petition was filed, petitioner resided in Greensboro, North Carolina.  The deficiencies result from the inclusion in income of funds embezzled by petitioner's wife, Linda, in the respective amounts of $17,450 in 1991, $25,997 in 1992, and $28,379 in 1993, and the disallowance of losses in the respective amounts of $3,345 in 1991, $3,213 in 1992, and $2,055 in 1993 claimed on the returns from a bookkeeping business operated by Linda.

The sole issue is whether petitioner is entitled to relief as a so-called innocent spouse pursuant to section 6013(e)(1).

The facts may be summarized as follows.  Petitioner and Linda married in 1988.  They had a child in 1992.  Petitioner had worked as a "general superintendent" for several construction companies.  Petitioner dropped out of college in 1979 but went back in the fall of 1991 as a full time student majoring in civil engineering with a stipend that included tuition and books.  Linda worked full-time as a bookkeeper/accountant for Datanet Services, Inc. (Datanet), and essentially supported the family.  Linda was approximately 28 years old during 1991.  Petitioner was apparently a few years older.

From the beginning, petitioner and Linda had financial difficulties.  In 1988, they sought protection under chapter 13 of the Bankruptcy Code.  The bankruptcy plan required them to pay

$465 per month.  During 1991, 1992, and 1993, Linda received wages in the amounts of $37,882, $30,085, and $27,191, respectively.  Petitioner's employment was "sporadic".  He had income in the amounts of $4,013 for 1992 and $2,203 for 1993.

During 1991, when petitioner reentered college, Linda began embezzling funds from Datanet.  She embezzled $17,450, $25,997, and $28,379 during 1991, 1992, and 1993, respectively.  These funds were spent on food, clothing, rent, furniture, and other living expenses, including expenses for petitioner's education. Petitioner and Linda took vacations to the beach each year and also a trip to Colorado.  Linda was arrested in September 1993, and convicted on March 25, 1994.

Petitioner and Linda filed joint Federal income tax returns for each of the years in issue reporting wages discussed above. Petitioner and Linda did not report the amounts embezzled from Datanet.  Petitioner and Linda deducted losses from the alleged accounting service operated by Linda.  These losses were fictitious.  Respondent determined that the embezzled funds constituted gross income and disallowed the losses.  Respondent also determined that accuracy-related penalties for negligence were due.  Petitioner does not contest any of the adjustments, but rather contends that he is entitled to relief of liability under the so-called innocent spouse provisions contained in section 6013(e).

Section 6013(a) permits a husband and wife to file a joint income tax return.  When a joint return is filed, both spouses

become jointly and severally liable for the entire tax.  Sec. 6013(d)(3).  A spouse may be relieved of liability, however, if the following requirements of section 6013(e) are satisfied:  (1) The taxpayer and his or her spouse file a joint return for the taxable year; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the latter spouse; (3) the taxpayer establishes that in signing the return he or she neither knew, nor had reason to know, of the substantial understatement; (4) taking account of all the facts and circumstances, it is inequitable to hold the taxpayer liable for the deficiency in tax resulting from the substantial understatement; and (5) the understatement exceeds 10 percent of the taxpayer's adjusted gross income for the preadjustment year (if such adjusted gross income is $20,000 or less).  An understatement is substantial if it exceeds $500.  Sec. 6013(e)(3).  Petitioner bears the burden of proving all five conditions of section 6013(e) have been satisfied.  Rule 142(a); Ratana v. Commissioner, 662 F.2d 220 (4th Cir. 1981), affg. in part and revg. in part T.C. Memo. 1980-353.

It is undisputed that petitioner filed a joint return for each of the years in issue and that there were substantial understatements on those returns attributable to Linda's activities.  The dispute then focuses on whether petitioner knew or had reason to know of the understatements and whether it is inequitable to hold petitioner liable for the deficiencies.

Lack of actual knowledge is not sufficient to qualify for innocent spouse relief. Petitioner must establish that he had no reason to know of the understatements. Whether petitioner had reason to know of the understatements depends on whether a reasonable person in his circumstances could be expected to know that income had not been reported and that erroneous deductions had been claimed at the time the returns were signed. Flynn v. Commissioner, 93 T.C. 355, 365 (1989). Whether a duty to inquire into the propriety of the return arises depends on the taxpayer's education level, involvement in family business and financial affairs, presence of expenditures that appear lavish or unusual, and the culpable spouse's evasiveness or deceit concerning the couple's finances. Kistner v. Commissioner, 18 F.3d 1521, 1525 (11th Cir. 1994), revg. T.C. Memo. 1991-463. Petitioner contends that he neither knew nor had reason to know about Linda's defalcations from Datanet.

It is unnecessary to decide whether or not petitioner actually knew of the unreported income and bogus deductions because he clearly had reason to know of those items.[2] During these years petitioner and Linda received and spent over $71,000 embezzled from Datanet. At the same time they received gross income from wages in the amount of approximately $100,000. There were no savings, and they spent approximately $171,000 during the

[2] With regard to the 1993 return, petitioner obviously knew that that return was not correct. The return was signed by petitioner on Mar. 9, 1994. Linda was indicted in January 1994, and pled guilty and was convicted on Mar. 25, 1994.

3 years in issue. The amounts embezzled constituted 42 percent of that amount. It is simply ludicrous for a person who was a mature full-time college student to say that he had no reason to know that something was not awry with this situation. It may be that he did not know exactly where the money came from, but surely he was aware when the returns were filed that they spent more than they were reporting on their returns.

The same is true concerning the deductions claimed for the alleged accounting business. Petitioner knew that Linda worked full-time. During 1992 and 1993 she either was pregnant or had a baby. There is no evidence that remotely suggests that Linda's alleged accounting business was a reality.

Finally, while it is perhaps unnecessary to discuss whether it would be inequitable to hold petitioner liable for the deficiencies, see sec. 6013(e)(1)(D), we note that petitioner is in a poor position to make such a claim. In making this observation we consider, inter alia, whether petitioner significantly benefited from the understatement, beyond normal support, and whether petitioner has been divorced. Belk v. Commissioner, 93 T.C. 434, 440 (1989); sec. 1.6013-5(b), Income Tax Regs.

Petitioner may be in the process of being divorced, and while married to Linda he may not have enjoyed a lavish lifestyle. But he clearly did not live the life of a full-time student, and the lifestyle that he did enjoy was due in no small part to Linda's defalcations. Furthermore, after Linda was

convicted, the only person who survived with any benefit was petitioner.  His college education had been paid for during this period.  He may not have walked away with many tangible benefits, but he did receive that great intangible benefit.  We believe, therefore, that it is not inequitable to hold petitioner liable for the tax liabilities.

<u>Decision will be entered for respondent</u>.