Plaintiff appeals Defendant's Conference Decision (CD) dated February 7, 2006. In the CD, Defendant denied Plaintiffs claim that she is entitled to relief from joint liability with her now deceased husband under the provisions of ORS316.369,[1] commonly referred to as "innocent spouse" relief. The court held a telephone trial in the appeal October 25, 2006. Plaintiff appeared and testified on her own behalf. Nancy Grigorieff (Grigorieff), Auditor, appeared and testified on behalf of Defendant. The case is ready for ruling. *Page 238 
 I. STATEMENT OF FACTS
Plaintiff married Steven L. Kinne (Kinne) in 1983 and they resided in Tillamook, Oregon, throughout their marriage. Kinne maintained a chiropractic clinic in Tillamook that suffered from financial problems. Plaintiff claims that, throughout her marriage, Kinne mentally abused and controlled her. Plaintiff submitted a lengthy Affidavit entitled "My Story," which relates the events of Plaintiff's life. Plaintiff also submitted a shortened version entitled "Affidavit of Fact," which relates specifically to her marriage. That Affidavit of Fact states, in relevant part:
 "My late husband was a very large, over bearing, and dominating man. Immediately after getting married, my late husband began mentally abusing me. He started by calling me a spectacle and that I was causing too much attention. He demanded that I only wear black, gray or navy. He threw my clothes on the floor many times and demanded that I get rid of them or send them back. He sold my car that I owned before getting married, and used the money to pay his own personal debts. He kept me isolated at home or went with me wherever I went. He would not allow me to be involved in any business or financial affairs. In 1983, shortly after getting married, he, along with the help from [another man], insisted that I was possessed by the devil and that they would institutionalize me [if] I stepped out of line. My late husband declared that I was evil and would forever be barren because my evilness would kill any embryo inside of me. I got pregnant with my first child in February of 1988. My late husband would not allow me to go to the doctor. He said that he believed that I could not carry and deliver a normal baby. He believed that the baby would be some kind of freak or alien and that I was not allowed to go to the local hospital to deliver it because he didn't want to be embarrassed by the alien baby because it would damage his practice and reputation in town. He forced me to have the baby at home, and after 20 hours of hard labor, he reluctantly drove me to Forest Grove Hospital and dropped me off and then abandoned me. I had three more children and a terrible miscarriage from 1988 to 1995. I became totally exhausted physically and mentally and had severe health problems. I became completely controlled and dependent on my late husband. He made all the decisions at the clinic and at home, both financially and personally including paying the bills, and filing income taxes. My *Page 239 
late husband either ordered me, forced me, tricked me, or simply forged my signature on any document that he wanted me to sign. The mental abuse continued throughout our marriage. He constantly insulted me and kept my confidence beaten down. The threats of institutionalizing me and taking my children away from me continued. He claimed that he would take the kids if I tried to leave him. I was not a wife to my late husband, I was simply a prisoner who was mentally abused and controlled by him and subject to his actions and decisions. I did not have any knowledge of his actions of filing tax returns through out our marriage and especially during the period of 1995, 1996, 1997, 1998, 1999, 2000, 2001, and 2002. He died and left me with extreme credit card debt and debt from his clinic in addition to the IRS and DOR debt. I have lost our home and most of our personal possessions, and the kids and I have been living in poverty. I am earnestly trying to take care of everything and finish raising my four children and get them through this horrible trauma. * * *."
In 1996, Kinne became involved with an "anti tax organization" and became convinced he did not lawfully owe income tax. In 1997, Kinne went to a doctor and was diagnosed with cardiomyopathy and advised he had five years to live. At that time, Kinne had a $1 million life insurance policy with Plaintiff as the designated beneficiary. In December 2001, Kinne became involved with another gentleman (TR) who set up The Kinne Family Limited Partnership. Kinne transferred all their assets into the partnership. Kinne told Plaintiff to contact TR after he died and TR would be her financial advisor and manage the $1 million life insurance proceeds.
In December 2002, Kinne passed away. Plaintiff contacted TR and he instructed her to amend the partnership agreement by removing Kinne's name and adding TR's name as a general partner. At that time, TR, along with another man (MS), formed a trust called PGP P with them named as trustees. As explained by Plaintiff:
 "The life insurance [proceeds] came in two separate checks. I was instructed by [TR] and [MS] to sign over one of these checks. I did not even see the other check which was signed by [TR] because it was made out to The Kinne Family Limited Partnership. [TR] and [MS] then had full control of the *Page 240 
entire million dollars. They claimed that in February 2003, they invested $900,000+ in a company called Capital Holdings, LLC with CEO [NS] * * *. After only approximately one month after they invested almost the entire amount of the life insurance, all the accounts of Capital Holding, LLC were seized by the government, and continue to be seized to this day."
It was only after all these events that Plaintiff became aware of Kinne's involvement with an "anti tax organization" and that MS and NS had been carrying out fraudulent investment schemes for many years.
For tax years 1998 and 1999, Plaintiff filed joint returns with Kinne. Both returns reported $-0- income and $-0- tax. The returns were selected for audit by the Internal Revenue Service (IRS), which increased the reported Oregon taxable income for each year. Based on the IRS's audit report, Defendant determined Plaintiff and Kinne owed tax and issued deficiency notices for both years in 2002. In late 2001 and early 2002, Kinne began to inform Plaintiff of their problems with the IRS and Defendant. After Kinne died, Plaintiff filed amended returns, on behalf of Kinne, for both years with a married filing separate status. The returns reported taxable income and tax due. Although the IRS apparently accepted the amended returns, Defendant refuses to do so, claiming the amended returns were not timely submitted pursuant to Treasury Regulation section 1.6013(a)(1) (2003).
Because Defendant refused to accept the amended returns, Plaintiff pursued relief from the joint returns as an innocent spouse. Defendant denied her claims for innocent spouse, allocation of liabilities, and equitable relief in its CD issued February 7, 2006. Plaintiff appeals Defendant's CD, claiming she is entitled to relief under one of the three provisions available. Prior to trial, the parties agreed to submit the case to the court on the issue of whether Plaintiff qualifies for relief under the innocent spouse provisions or the allocation of liabilities provisions. If the court concludes Plaintiff does not qualify under either of those provisions, the parties agreed to proceed under the equitable relief provisions. *Page 241 
 II. ANALYSIS
ORS 316.369 allows a spouse to be relieved of joint liability in certain circumstances. The statute states, in pertinent part:
 "If a joint return has been made under this chapter for a tax year, a spouse shall be relieved of liability for tax, including interest, penalties and other amounts, for the tax year:
 "(1) If the Internal Revenue Service has made a determination that relieved the spouse of liability for federal taxes for the same tax year under Internal Revenue Code provisions that provide for spouse relief from liability; or
 "(2) If the Internal Revenue Service has not made a determination that relieved the spouse of liability for the tax year, but the spouse qualifies to be relieved of state tax liability under rules adopted by the Department of Revenue. In adopting rules under this subsection, the department shall consider the provisions of the Internal Revenue Code and regulations issued there under that provide for spouse relief from liability for federal taxes."
1. The parties agree the IRS has not made a determination that Plaintiff should be relieved of joint liability. Instead, it appears the IRS simply accepted the amended returns with the married filing separate status, which eliminated any liability for Plaintiff. Subsection two of ORS 316.369, therefore, is the applicable section and provides for relief pursuant to rules adopted by Defendant. Defendant adopted rules allowing for spousal relief in one of three situations: innocent spouse, OAR 150-316.369(4); allocation of liabilities, OAR 150-316.369(5); and equitable relief, OAR 150-316.369(6).[2] Defendant generally, although not completely, followed comparable provisions adopted by Congress and the Treasury. See
IRC § 6015;[3] Treas Reg §§ 1.6015-2, 1.6015-3, and1.6015-4 (as amended in 2002). *Page 242 
A. Innocent Spouse
The first provision allowing for spousal relief from joint liability is the innocent spouse provisions of OAR 150-316.369(4). The rule provides, in pertinent part:
 "Innocent Spouse. Innocent spouse relief is available only for deficiencies or assessed deficiencies. This provision does not authorize relief from liabilities that taxpayers reported properly on the joint return but did not pay. If the following four conditions are met, the individual will qualify for innocent spouse relief. The department will relieve the individual of state liability for tax in whole or in part (including interest, penalties, and other amounts) for the taxable year.
 "(a) Conditions:
 "(A) The requesting spouse filed a joint return for the taxable year for which relief is sought;
 "(B) On such return there is an understatement of tax attributable to erroneous items of the spouse with whom the requesting spouse filed the return;
 "(C) The requesting spouse establishes that he or she did not know, and had no reason to know, of the understatement when signing the return;
 "(D) Taking into account all of the facts and circumstances, it is unreasonable in the department's judgment to hold the requesting spouse liable for the deficiency attributable to the understatement.
 "(b) If the taxpayer seeking relief asks for a refund of state tax payments, the taxpayer also must provide proof that he or she made the payments to the Oregon Department of Revenue. If the department grants relief, it will refund payments made by the requesting spouse according to the procedures and refund limitations of ORS 305.270 and 314.415. This applies to any requests for relief received by the department on or after August 1, 2004."
In the CD, the Conference Officer concluded that conditions (A) and (B) were met. Defendant does not dispute that finding. The Conference Officer found, however, that Plaintiff failed to satisfy condition (C), which requires "[t]he *Page 243 
requesting spouse establish that he or she did not know, and had no reason to know, of the understatement when signing the return[.]" Id. Defendant claims Plaintiff either knew or had reason to know of the understatements when she signed the 1998 and 1999 returns. Grigorieff testified that the following facts evidence Plaintiff knew or should have known of the understatement: (1) Plaintiff has a high school education and had previously worked for a bank, an accounting firm, and Tillamook County, (2) Plaintiff managed her own financial affairs prior to marriage, (3) Plaintiff prepared a sound affidavit by herself for these proceedings, (4) Plaintiff worked at the chiropractic clinic approximately four years prior to having children, (5) Plaintiff convinced Kinne to stop conversing with the man who convinced Kinne she was possessed by threatening to divorce Kinne if he did not stop contact with the man, (6) Plaintiff purposefully got pregnant showing she was able to make choices and follow through on them, (7) Plaintiff was busy running her home and homeschooling her children, showing she had a certain level of competence to handle that situation, (8) Plaintiff offered no substantive evidence to corroborate her testimony, and (9) Plaintiff knew Kinne had a long history of financial problems.
OAR 150-316.369(4) models, in substantial part, Internal Revenue Code section 6015(b)(1) and Treasury Regulation section 1.6015-2. The regulation has a section detailing when a taxpayer knows or has reason to know of an understatement. It states, in pertinent part:
 "A requesting spouse has knowledge or reason to know of an understatement if he or she actually knew of the understatement, or if a reasonable person in similar circumstances would have known of the understatement. For rules relating to a requesting spouse's actual knowledge, see § 1.6015-3(c)(2). All of the facts and circumstances are considered in determining whether a requesting spouse had reason to know of an understatement. The facts and circumstances that are considered include, but are not limited to, the nature of the erroneous item and the amount of the erroneous item relative to other items; the couple's financial situation; the requesting spouse's educational background and business experience; the extent of the requesting spouse's participation in the activity that *Page 244 
resulted in the erroneous item; whether the requesting spouse failed to inquire, at or before the time the return was signed, about items on the return or omitted from the return that a reasonable person would question; and whether the erroneous item represented a departure from a recurring pattern reflected in prior years' returns (e.g., omitted income from an investment regularly reported on prior years' returns)."
Treas Reg § 1.6015-2(c) (emphasis added).
2-4. Federal cases have held that where certain facts on the return raise questions for a taxpayer, the taxpayer has a duty to inquire as to the questionable item. See Cullen v.Comm'r, TC Memo 2004-176, WL 1682835 at *4 (2004) ('Where, as here, a taxpayer on notice that his spouse had unreported income but not the exact amount of income, fails to fulfill a `duty of inquiry' * * *."). Failing to fulfill a duty of inquiry may cause a taxpayer to be treated as having actual or constructive knowledge of the understatement. Id. In the subject case, Plaintiff signed a return reporting $-0- taxable income and $-0- income tax. Those circumstances alone should have caused Plaintiff to question the accuracy of the return. She did not, however, question Kinne about the figures. Plaintiff testified she was expected to and required by Kinne to sign documents without questioning them.
5. The federal courts, as well as the Treasury Regulations, recognize the duty to inquire must consider the requesting spouse's circumstances when evaluating whether that taxpayer had reason to know of the understatement. Many courts have been willing to consider elements of abuse as impacting a spouse's ability to know of the understatement. See Cook,The Emerging "Abuse" Defense in Innocent Spouse Cases, 59 Tax'n for Acct 147, WL 710445 (Sept 1997) ("[T]he abuse defense * * * although not always successful, is becoming more prevalent. There appears to be some evidence that the courts are sympathetic toward mentally and physically abused spouses."). In Kistner v. Commissioner, 18 F3d 1521
(11th Cir 1994), the Eleventh Circuit found the requesting spouse qualified for innocent spouse relief based on years of patterned abuse. The court stated: *Page 245 
 "This court has held that the innocent spouse's complete deference to the husband's judgment concerning the couple's finances, standing alone, is insufficient to establish that the spouse had no reason to know. Nevertheless, where physical or mental abuse is shown, even when the abuse does not rise to the level of coercion, a basis may exist for allowing innocent spouse relief."
Id. at 1526.[4]
Not all courts have been sympathetic towards claims of physical and mental abuse by spouses requesting innocent spouse relief.See, e.g., Wiksell v. Comm'r, 90 F3d 1459, 1462 (9th Cir 1996) (finding that "[w]hatever tragedy and duress Appellant faced, they did not significantly cloud her perception").
Other cases have considered the level of the requesting spouse's involvement in the financial aspects of his or her marriage when considering whether the spouse had reason to know of the understatement. For example, in Schwimmer v.Commissioner, the husband presented returns each year to the petitioner for signature "without giving petitioner any realistic opportunity to review the returns, presenting petitioner with the returns only after they had been prepared and insisting that she sign the returns immediately." TC Memo 1996-353, WL 429071 at *4 (1996). The court found the wife qualified for innocent spouse relief, noting:
 "The evidence indicates that petitioner's participation in the family finances was very limited and that [the husband] was extremely autocratic and private in handling his and the family's financial affairs. [The husband] admitted that he disclosed very little to petitioner regarding his financial activities."
Id. at *7.
6, 7. Again, the court's inquiry under subsection (4)(a)(C) of OAR 150-316.369 is whether a reasonable person in Plaintiffs situation had reason to know of the understatement of *Page 246 
income. The court finds the federal case law that considers a plaintiff's situation, including mental abuse and controlling behavior, to be most persuasive because it considers, at the deepest level, a requesting spouse's particular situation. Plaintiff testified at length as to the years of control by Kinne and how that impacted her ability to question matters. The court acknowledges that Plaintiff provided little information to corroborate her testimony. Notwithstanding, the court found Plaintiff's testimony compelling and credible. Based on the facts and case law, the court finds that, given Plaintiff's particular circumstances, she had no reason to know of the understatement and her duty to inquire was negated by her emotional abuse.
8. Defendant argues that Plaintiff is a well-spoken and articulate individual and, therefore, should be capable of understanding the returns she signed were incorrect. The court does not agree with Defendant that articulate and competent individuals are immune from the effects of emotional abuse. The court finds, therefore, that Plaintiff has satisfied the requirements of OAR 150-316.369(4)(a)(C).
As previously stated, OAR 150-316.369(4)(a) has four conditions that a requesting spouse must satisfy to qualify for innocent spouse relief. The CD found Plaintiff satisfied the first two conditions in OAR 150-316.369(4)(a)(A) and (B). The CD determined Plaintiff did not satisfy the third condition found in OAR 150-316.369(4)(a)(C). As a result, the CD did not evaluate whether Plaintiff satisfied the fourth and final condition in OAR 150-316.369(4)(a)(D). Because this court has concluded Plaintiff does satisfy the third condition, the court must turn its attention to the final condition.
9, 10. OAR 150-316.369(4)(a)(D) provides:
 "Taking into account all of the facts and circumstances, it is unreasonable in the department's judgment to hold the requesting spouse liable for the deficiency attributable to the understatement."
(Emphasis added.) The rule is clear that the question of whether it would be unreasonable to hold the requesting spouse liable is a decision that must be made by Defendant. *Page 247 
In this case, the Conference Officer did not consider the question because she denied the case under subsection (C). The court finds, therefore, that unless the court grants Plaintiff relief under the "allocation of liabilities" provision, the case must be remanded to Defendant to allow it the opportunity to consider whether subsection (D) of OAR 150-316.369(4)(a) is satisfied, thus allowing the grant of innocent spouse relief.
B. Allocation of Liabilities
OAR 150-316.369(5) provides another avenue of relief from joint tax liability for a requesting spouse. The rule states, in pertinent part:
 "Allocation of liabilities for taxpayers no longer married, legally separated, or no longer living together. Relief is available only for deficiencies or assessed deficiencies. This provision does not authorize relief from liabilities that taxpayers reported properly on the joint return but did not pay.
 "(a) An individual may apply to allocate a deficiency if the following two conditions are met:
 "(A) The requesting spouse filed a joint return for the taxable year for which relief is sought; and
 "(B) At the time of the request, the requesting spouse is no longer married to, is legally separated from, or has not been a member of the same household as the other spouse at any time during the 12-month period ending on the filing date of the request.
 "(b) Relief under allocation of liability is subject to several limitations:
 "(A) A request will be denied if assets were transferred between the requesting spouse and the other spouse as part of a fraudulent scheme.
 "(B) Relief is not available if the department can demonstrate that the requesting spouse had actual knowledge when he or she signed the return of an item that gave rise to a deficiency.
 "(C) Relief will only be available if the liability exceeds the value of any disqualified assets (as defined in Internal Revenue Code § 6015(c)(4)(B)) transferred to the requesting spouse by the nonrequesting spouse. *Page 248 
 "(D) The department will not refund payments made by the requesting spouse on the liability for which relief was granted if those payments were made before relief was granted. This applies to any requests for relief the department receives on or after August 1, 2004."
(Emphasis added.)
Kinne earned income from his chiropractic business, which he failed to account for in the 1998 and 1999 returns. Because Plaintiff was aware of Kinne's chiropractic business, Defendant claims she had "actual knowledge * * * of an item that gave rise to [the] deficiency." Id. at (5)(b)(B). As a result, Defendant claims the limitation in subsection (5)(b)(B) applies to bar Plaintiff relief under the allocation of liabilities provision.
11. Oregon's rule, again, models its federal counterpart.See IRC § 6015(c). The court questioned Grigorieff about Defendant's interpretation of the phrase "item that gave rise to a deficiency." She testified that Defendant interprets the language to refer to the requesting spouse having knowledge of the activity giving rise to the income. She testified the language does not refer to knowledge of the incorrect reporting of the item of income. Defendant's interpretation is supported by case law. In Cheshire v.Commissioner, 282 F3d 326, 336 (5th Cir 2002), the Fifth Circuit held that "the term `item' * * * refers to an actual item of income, deduction, or credit, rather than the incorrect reporting of such an item." See also Mitchell,292 F3d at 806 ("subparagraph 6015(c)(3)(C) does not require the IRS to show that an individual seeking * * * relief had actual knowledge of the improper tax treatment of an item with respect to which the individual seeks relief).
12. If a requesting spouse has knowledge of the activity, the limitations to relief apply. Here, Plaintiff had knowledge of Kinne's business and, therefore, had knowledge of an "item that gave rise to a deficiency." OAR 150-316.369(5)(b)(B). Plaintiff does not, therefore, qualify for relief under the allocation of liabilities section.
The court notes that the Treasury Regulation supporting IRC section 6015(c) provides that, if the requesting *Page 249 
spouse demonstrates they suffered from domestic abuse, the limitation on relief resulting from knowledge of the item will not apply. Treas Reg § 1.6015-3(c)(2)(v). The regulation states, in pertinent part:
 "Abuse exception. If the requesting spouse establishes that he or she was the victim of domestic abuse prior to the time the return was signed, and that, as a result of the prior abuse, the requesting spouse did not challenge the treatment of any items on the return for fear of the nonrequesting spouse's retaliation, the limitation on actual knowledge in this paragraph (c) will not apply."
Id. Defendant provided no similar exception in the administrative rules. It is not clear whether the omission was intentional or an oversight. Regardless, Oregon does not provide a similar exception for domestic abuse.[5] As a result, Plaintiff is not entitled to relief under the allocation of liabilities provision.
 III. CONCLUSION
For the reasons stated above, the court finds this appeal should be remanded to Defendant to allow it the opportunity to consider the fourth condition for relief under the innocent spouse provisions. Specifically, Defendant shall consider whether "[t]aking into account all of the facts and circumstances, it is unreasonable * * * to hold [Plaintiff] liable for the deficiency attributable to the understatement." OAR 150-316.369(4)(a)(D). If Defendant finds Plaintiff does not satisfy the fourth condition, Plaintiff may appeal Defendant's decision to this court for review under an abuse of discretion standard. At that time, Plaintiff may renew her claim for relief under the equitable relief provisions of OAR 150-316.369(6). Now, therefore,
IT IS THE DECISION OF THIS COURT that this appeal is remanded to the Department of Revenue for consideration of OAR 150-316.369(4)(a)(D).
[1] All references to the Oregon Revised Statutes (ORS) are to the 2005 provisions.
[2] All references to the Oregon Administrative Rules (OAR) are to the 2005 provisions.
[3] All references to the Internal Revenue Code (IRC) are to 2000.
[4] The court in Kistner interpreted former section 6013(e), which was repealed and replaced by current section 6015. Pub L 105-206, § 3201(a), (e)(1) (1998). Courts have held that cases interpreting former section 6013(e)(1)(C) "remain persuasive, if not controlling, under the current subparagraph 6015(b)(1)(C)." Mitchell v.Comm'r, 292 F3d 800, 803 (DC Cir 2002) (Mitchell).
[5] Defendant did include consideration of domestic abuse under the provisions for equitable relief. See OAR 150-316.369(6)(c)(A)(iii). As stated above, the parties agreed not to submit the case to the court on the equitable relief provisions unless the court concludes Plaintiff is not entitled to relief on the innocent spouse and allocation of liabilities provisions. *Page 250