T.C. Memo. 1997-506

UNITED STATES TAX COURT

ELOISE GADDY JOENS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6306-95.                    Filed November 10, 1997.

Edward P. Phillips, for petitioner.

William B. McCarthy, for respondent.

MEMORANDUM OPINION

PARR, Judge:  Respondent determined deficiencies in, and additions to, petitioner's Federal income taxes as follows:

|      |            | Additions to Tax | | |
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
|------|-----------|-----------------|-----------------|-----------|
| 1982 | $9,668    | $4,834          | 50% of the interest due on $9,668 | $2,417 |
| 1983 | 22,915    | 11,458          | 50% of the interest due on $22,915 | 5,729 |
| 1984 | 127,635   | 63,818          | 50% of the interest due on $127,635 | 31,112 |

All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar.

After concessions, the issues for decision are: (1) Whether petitioner qualifies as an innocent spouse under section 6013(e) for 1982, 1983, and 1984. We hold she does not. (2) Whether petitioner is liable for additions to tax for fraud under section 6653(b) for 1982, 1983, and 1984. We hold she is. (3) Whether petitioner is liable for additions to tax for substantial understatement for 1982, 1983, and 1984. We hold she is.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference. At the time the petition in this case was filed, petitioner resided in Boynton Beach, Florida.[1]

General Background

Petitioner married Nelson Emmens (Emmens) in 1981. Petitioner and Emmens filed joint returns for 1982, 1983, and 1984, reporting adjusted gross income of ($5,803), $17,956, and $24,759, respectively, and total taxes of $231, $1,690, and $2,857, respectively.

_____

[1] At the time of trial, petitioner had remarried and was a resident of Urbandale, Iowa.

Petitioner and Emmens were divorced in 1994. However, petitioner had not lived with Emmens since May 1988, when he was arrested for narcotics violations. Emmens has been incarcerated since that time and is currently serving a 17-year sentence at the Federal penitentiary in Jesup, Georgia.

Legitimate Business Activities

From 1978 until December 1984, petitioner owned and operated the Lake Clarke Beauty Salon (the beauty salon) through a partnership with her first husband, Bobby Buckner. In 1982, 1983, and 1984, the beauty salon reported net income of $4,944, $8,448, and $838, respectively. Petitioner received a 50-percent distribution of such amounts. Petitioner managed the beauty salon on her own after separating from her first husband and continued to do so after she married Emmens. Petitioner kept records for the beauty salon and ensured that tax returns for the business were filed.

During the years in issue, Emmens was a self-employed locksmith. Emmens operated the business as a sole proprietorship in 1981 and 1982, and incorporated the business as Nelson Locksmith, Inc. (Nelson Locksmith or the corporation) in 1983. In 1982, Nelson Locksmith generated a $8,276 net loss, reflected on the joint return filed by petitioner and Emmens. In 1983, Emmens reported $1,200 in wages from Nelson Locksmith. Petitioner and Emmens owned the building in which Nelson

Locksmith operated, and the corporation paid them $1,500 per month rent. On the 1983 joint return, petitioner and Emmens reported rental income from Nelson Locksmith of $12,301.[2]

Emmens sold Nelson Locksmith in January 1984. On their 1984 joint return, petitioner and Emmens reported a $20,753 gain attributable to the sale of the business and rental income of $2,243.

Petitioner was an authorized signatory on the bank accounts of Nelson Locksmith. Additionally, petitioner occasionally wrote checks on this account for both business and personal purposes.

Criminal Activity

During the years in issue, Emmens was involved in narcotics trafficking. He and various other individuals, including John Sydoriak (Sydoriak) and Vincent Kadyszewski (Kadyszewski), smuggled substantial amounts of marijuana and cocaine into the United States from the Bahamas.

The typical narcotics transaction would proceed as follows. Three boats would depart from Delray Beach, Florida (Delray Beach), and travel to Bimini, Bahamas (Bimini). The boats were

---

[2] The parties stipulated that for 1983 Nelson Locksmith paid petitioner and Emmens $1,500 per month, and that they reported $12,301 of rental income on their joint return. We realize that the reported rental income for 1983 is less than $18,000 ($1,500 x 12). The record is silent as to whether petitioner and Emmens received $1,500 each month for 12 months in 1983. Thus, we find that the $5,699 is a concession by respondent in favor of petitioner.

equipped with highly sophisticated electronics which were installed and maintained by a social acquaintance of Emmens and petitioner. The electronics allowed the boats to scan the communication frequencies of the Drug Enforcement Agency (DEA), Customs Agency (Customs), and local law enforcement agencies. Additionally, the boats could communicate with each other, and with other individuals involved in the operation on the mainland. Petitioner would assist in monitoring these communications from the mainland.

Once the boats arrived in Bimini, they would wait for a plane to approach. They would then contact the plane by radio, and put a flag on top of one of the boats so the pilot could distinguish where they were located. Once this was accomplished, the plane would drop the drugs into the water. The first boat would then serve as a "scout" boat, and the remaining two boats would serve as "pick up" boats.

On a typical drug run, the participants would leave Delray Beach at approximately 3 or 4 a.m. and not return until evening. The participants would usually remain on the boats for approximately 12 to 18 hours for such transactions. Accordingly, the participants would bring food and other supplies along on such trips. Petitioner would occasionally outfit the boats with these needed supplies for the trips.

Petitioner had an active role in the drug smuggling operation. She was present during conversations regarding the drug smuggling. On at least one occasion, she helped "off-load" drugs from a boat in Delray Beach after a transaction. Furthermore, petitioner had access to large amounts of cash and would occasionally "pay-out" other participants in the operation.

In addition to conducting the smuggling operation by boat, Emmens also began to utilize planes for the narcotics transactions. In furtherance of this scheme, he purchased several planes.

Emmens earned a substantial income from the drug business, mostly in cash. Petitioner used some of this cash to purchase expensive gifts for both herself and Emmens, including a parcel of real estate and various items of jewelry. In addition, petitioner traveled to Paris, France, on the Concorde.

On May 11, 1988, Emmens landed one of his planes, which was carrying a load of cocaine, on the private airstrip located behind his and petitioner's home. As he was taxiing the plane into the hangar, a Customs helicopter landed; Customs agents thereafter arrested Emmens for narcotics violations. Emmens pleaded guilty to narcotics trafficking and was sentenced to 210 months in prison and fined.

Within 24 hours of his arrest, the Internal Revenue Service (IRS) obtained a search warrant for his and petitioner's

residence.  Upon execution of the warrant, Special Agents for the IRS found no financial records pertaining to Emmens and petitioner.  At that time, Emmens was in Federal custody and access to the residence was under petitioner's control.  Petitioner had removed many items from the residence, including a file cabinet containing financial records.  Special Agents also found a floor safe in the residence that was open and empty.

Thereafter, the tax investigation, which proceeded separately from the narcotics investigation, was expanded to include petitioner and Kadyszewski, in addition to Emmens.  Petitioner and Emmens were subsequently indicted for tax evasion under section 7201 for 1982, 1983, and 1984.  Kadyszewski was indicted for conspiracy.  Emmens pleaded guilty to tax evasion for 1984.  The terms of the plea agreement included the dismissal of the criminal tax case against petitioner and the dismissal of the remaining criminal tax counts against Emmens.  Kadyszewski subsequently went to trial and was convicted for conspiracy to defraud the United States.

Real Estate

Prior to her marriage to Emmens, petitioner owned a residence on Flamango Lakes Drive[3] in West Palm Beach, Florida (the Flamango Lakes property or the property).  Petitioner and

---

[3]    In light of some confusion at trial, we note that petitioner owned a residence on "Flamango Lakes Drive", and not "Flamingo Lakes Drive."

Emmens held their wedding at the property and lived there for a period of time. When petitioner and Emmens decided to move, they put the Flamango Lakes property up for sale. The purchase of a new residence, however, was not contingent on the sale of the Flamango Lakes property. The property was not sold and was subsequently converted into rental property in June 1984. Petitioner maintained the monthly rental income records pertaining to the Flamango Lakes property.

Petitioner and Emmens moved from the Flamango Lakes property in 1984 to a house in Antiquers Aerodrome (the Aerodrome property), a development in Delray Beach in which all the homes have access to a private airstrip. The Aerodrome property, which was purchased for $250,000 in cash, had four bedrooms, three baths, a pool, and a hangar in the backyard. The record owner of the Aerodrome property, however, was Palm Beach Property Investments, Inc. (Palm Beach Property Investments), which was incorporated by Kadyszewski. The corporation was used to conceal the ownership of the Aerodrome property. Although petitioner and Emmens lived at this property, they did not pay rent to Palm Beach Property Investments. Further, petitioner was present at a meeting of the Antiquers Aerodrome homeowner's board where the titling of the property in a corporate name was discussed. Petitioner and Emmens lived at the Aerodrome property for 1 year, and then moved to a residence on Gardenia Street (the Gardenia

residence) in Delray Beach.[4]  The Gardenia residence was a
waterfront home.

In addition to these various houses, petitioner bought a
vacant lot in Antiquers Aerodrome in 1986 (the lot).  The
purchase price of the lot was approximately $72,000.  The entire
purchase price was financed by Kadyszewski.

Automobiles

In March 1982, petitioner purchased a 1982 Cadillac Eldorado
for $28,250.

In January 1984, petitioner and Emmens purchased a 1984
Chevrolet Cavalier for $16,095 as a birthday present for
petitioner's daughter.  As part of the $5,000 down payment for
this vehicle, petitioner wrote a check for $4,000.  In addition,
Palm Beach Property Investments held title to another Cadillac
that petitioner and Emmens utilized.

Boats and Airplanes

Emmens and Kadyszewski owned various boats and airplanes
which were used in the narcotics smuggling operation.  The record
owners of these boats and planes, however, were corporations

---

[4]    It is unclear from the record how long petitioner and
Emmens lived at the Gardenia residence.  At some point, however,
petitioner and Emmens moved back to Antiquers Aerodrome to a
different house, as Emmens was arrested on the private airstrip.
The parties stipulated that "[t]he address of [the Aerodrome]
property was later changed..."  At trial, however, petitioner
referred to 2 different residences in the Antiquers Aerodrome
development, the second of which had a safe.

designed to conceal ownership. One such corporation was Flo-Mar, Inc. (Flo-Mar).

In November 1982, Flo-Mar, through its agent Kadyszewski, purchased a 1983 Offshore Open Fisherman boat for $25,000.

Petitioner, who was a notary public, notarized the transfer of the boat titles among the various corporations.

In November 1984, Flo-Mar, through its agent Emmens, purchased a 1979 Cessna airplane for $60,000, $30,000 of which was paid in cash.

Emmens was the president of Aladen Air Service, Inc. (Aladen), and petitioner was the secretary/treasurer. In addition to being a corporate officer of Aladen, petitioner was an authorized signatory on the corporation's bank account. In April 1984, Aladen purchased a 1974 Cessna airplane for $114,500. Petitioner was aware of this purchase.

On occasion, petitioner and Emmens used these boats and planes for social purposes.

Discussion

We begin by noting that, as a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The Commissioner, however, bears the burden of proof as to the addition to tax for fraud. Sec. 7454(a); Rule 142(b).

Respondent used the net worth method to calculate petitioner's income for the years in issue. Indirect methods of computing a taxpayer's income, such as the net worth method, are appropriate where the taxpayer fails to maintain records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability. Holland v. United States, 348 U.S. 121 (1954). The use of the net worth method was appropriate here, as petitioner did not keep adequate financial records, and "sanitized" her residence following Emmens' arrest.

Petitioner has not challenged, at trial or on brief, the accuracy of respondent's determinations in the notice of deficiency. She claims only that she is not liable for the deficiencies and additions to tax for the years in issue because she is entitled to innocent spouse status and did not participate in or have any knowledge of her then-husband's illegal activities.

Issue 1. Innocent Spouse Status

Respondent determined that petitioner and Emmens had unreported income of $41,908 in 1982, $58,745 in 1983, and $262,147 in 1984. The majority of this income came from narcotics trafficking. Petitioner asserts that she is not liable for the resulting deficiencies in, and additions to, Federal income tax for the years in issue because she qualifies as an innocent spouse pursuant to section 6013(e).

Spouses who file a joint return generally are jointly and severally liable for its accuracy and the tax due, including any additional taxes, interest, or penalties determined on audit of the return. Sec. 6013(d). However, section 6013(e) provides an exception. A spouse (commonly referred to as an innocent spouse) is relieved of tax liability if that spouse proves: (1) A joint return was filed for the years in issue; (2) the return contained a substantial understatement (defined in section 6013(e)(3) as any understatement over $500) of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) it would be inequitable to hold the relief-seeking spouse liable for the deficiency attributable to the understatement. Sec. 6013(e)(1); Flynn v. Commissioner, 93 T.C. 355, 359 (1989).

The spouse seeking relief bears the burden of proving that each of the four requirements has been satisfied. Rule 142(a); Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Russo v. Commissioner, 98 T.C. 28, 31-32 (1992); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). Failure to prove any one of the four statutory requirements will prevent innocent spouse relief. Stevens v. Commissioner, supra; Bokum v. Commissioner, 94 T.C. 126, 138-139 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

The parties have stipulated that joint returns were filed for the years in issue. Respondent contends, however, that petitioner does not meet the remaining section 6013 requirements.

Thus, the controversy herein focuses on three issues: (1) Whether the substantial understatements are attributable to grossly erroneous items of petitioner's then-husband, Emmens; (2) whether petitioner did not know, and had no reason to know, of the substantial understatements when she signed the return in each of the years in issue; and (3) whether it would be inequitable to hold petitioner liable for the income tax deficiencies attributable to such substantial understatements.

Based on the entire record, we find that the omissions from income are not grossly erroneous items attributable to Emmens alone, that petitioner knew or had reason to know of the understatements when she signed the returns, and that it is not inequitable to hold her liable for tax.

Grossly Erroneous Items

Petitioner must establish that there was a substantial understatement of tax attributable to grossly erroneous items of her then-husband, Emmens. Sec. 6013(e)(1)(B). "Understatement" is defined as the amount of tax required to be shown on the return less the amount of tax shown on the return, reduced by any rebate. Sec. 6661(b)(2)(A). A substantial understatement is any understatement that exceeds $500. Sec. 6013(e)(3). Any item

omitted from gross income is grossly erroneous. Sec. 6013(e)(2)(A). In addition, any claim of a deduction in an amount for which there is no basis in fact or law is grossly erroneous. Sec. 6013(e)(2)(B). A deduction has no basis in fact when the expense for which the deduction is taken was not made, and a deduction has no basis in law if the expense is not deductible under well-established legal principles or if no substantial legal argument can be made to support its deductibility. Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986).

Respondent determined that petitioner and Emmens had unreported income of $41,908 in 1982, $58,745 in 1983, and $262,147 in 1984. The majority of this income came from narcotics trafficking. Omissions from gross income are grossly erroneous. Sec. 6013(e)(2). The understatement of tax for each year attributable to the omitted income is substantial because it exceeds $500. Sec. 6013(e)(3).

Respondent contends that petitioner was an integral part of the narcotics trafficking operation and that she played a significant role in both the generation and concealment of the unreported income. Petitioner claims that she never engaged in her then-husband's narcotics trafficking operation and was completely unaware of his involvement with drug smuggling until the date of his arrest, May 11, 1988. Therefore, petitioner

contends, section 6013(e)(1)(B) is satisfied because the omitted income came solely from her then-husband's narcotics trafficking.

Petitioner's testimony that she was completely unaware of her then-husband's narcotics trafficking is implausible. Respondent's witness, Sydoriak, testified as to petitioner's function in the drug smuggling operation. At trial, Sydoriak indicated that petitioner helped outfit the boats with food supplies for the drug runs. Once the boats were underway, petitioner also assisted in monitoring radio transmissions. Furthermore, Sydoriak testified regarding specific instances where petitioner was directly handling large sums of cash and drugs.

Although Sydoriak was not an irreproachable witness, we find that his testimony was credible. Sydoriak had extremely detailed knowledge of the operation in general and had no incentive to testify other than truthfully.

Moreover, based on petitioner's testimony, we find it highly unlikely that she had no involvement in the operation and was completely unaware of the narcotics trafficking until 1988. Petitioner testified that she flew to Paris on the Concorde in 1985. Petitioner claimed that she did not pay for her ticket, but flew there with a girlfriend who had bought a ticket on a "buy one-get one free" arrangement. Petitioner testified that she thought her girlfriend was just being "nice". While in

Paris, petitioner opened a bank account (the account).  At trial, petitioner testified that she did not want to open the account, but her friend insisted.  Petitioner claims that her girlfriend even gave her the $3,000 with which to open the account. Petitioner claims the reason she opened the account was so she could be "a lady of the '80s".  Coincidentally, petitioner testified that deposits could also be made to the account from the Bahamas, the very location from which Emmens, her then-husband, was smuggling narcotics.  Furthermore, the husband of petitioner's girlfriend was also involved in the drug business with Emmens.

Thus, we reject petitioner's argument that the substantial understatement was attributable solely to Emmens' grossly erroneous items.  We find that petitioner assisted Emmens in drug smuggling and enjoyed the benefits of the illegally generated and unreported income.  Petitioner did not satisfy this second requirement and is not entitled to innocent spouse relief.

Knowledge of Understatements on the Returns

Assuming however, arguendo, that petitioner satisfied the grossly erroneous requirement, she still is not entitled to innocent spouse status.  To be entitled to relief as an innocent spouse, petitioner must show that, in signing the joint returns for the years in issue, she did not know and had no reason to

know of the substantial understatements of tax.  Sec. 6013(e)(1)(C).

In Stevens v. Commissioner, 872 F.2d 1499, the Court of Appeals for the Eleventh Circuit, in refusing to grant innocent spouse relief, approved our application of its "reason to know" standard.  The Court of Appeals stated that the "reason to know" standard is based on whether a "reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted".  Id. at 1505; see also Sanders v. United States, 509 F.2d 162 (5th Cir. 1975).  The test establishes a "duty of inquiry" on the part of the alleged innocent spouse.  Stevens v. Commissioner, supra.  As pointed out in Mysse v. Commissioner, 57 T.C. 680, 699 (1972), a spouse cannot close her eyes to facts that might give her reason to know of unreported income.  Furthermore, the alleged innocent spouse's role as homemaker and complete deference to the husband's judgment concerning the couple's finances, standing alone, are insufficient to establish that a spouse had no "reason to know".  Stevens v. Commissioner, supra at 1506.

In deciding whether petitioner had "reason to know" of the substantial understatements when she signed the returns, we take into account:  (1) Her level of education; (2) her involvement in the family's business and financial affairs; (3) the presence of

expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending pattern; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. Kistner v. Commissioner, 18 F.3d 1521, 1525 (11th Cir. 1994), revg. T.C. Memo. 1991-463; Stevens v. Commissioner, supra. The foregoing factors are considered "because, ordinarily, they predict what a prudent person would realize regardless of the other spouse's evasiveness or deceit". Bliss v. Commissioner, 59 F.3d 374, 379 (2d Cir. 1995), affg. T.C. Memo. 1993-390.

Petitioner did not have a college education. She never had any formal courses in bookkeeping or accounting. She was, however, the owner of her own business, Lake Clarke Beauty Salon. Petitioner began at the beauty salon as a "junior operator" and eventually purchased the business with her first husband. As owner of the beauty salon, petitioner kept records and ensured that tax returns for the business were filed. Petitioner managed the beauty salon on her own after separating from her first husband and continued to do so after she married Emmens. In addition, petitioner also kept records for rental property which she owned. Therefore, in considering her level of education, we find that petitioner had a practical education in business.

Petitioner was also intimately involved in the family's financial affairs. She had access to the family bank accounts;

she made deposits to and wrote checks on those accounts. Furthermore, petitioner was a signatory and wrote checks on Emmens' locksmith business account.

Moreover, there were several expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending pattern. The family moved to a new house, purchased new cars, and acquired various planes and boats which were used in the drug smuggling operation. The Aerodrome property was paid for in cash, and some of the other assets were paid in full. Petitioner knew the Aerodrome property was held in a corporate name. Petitioner testified that she believed the Aerodrome property belonged to Kadyszewski and that he was simply being "nice" by letting the family live there rent-free. Petitioner also testified that she believed the other assets, including the plane Emmens was using, "just belonged to Vince", referring to Kadyszewski. We are not convinced.

Additionally, petitioner's claim that Emmens made all of the household financial decisions does not aid in awarding her innocent spouse status. As we noted, a spouse's complete deference to the husband's judgment concerning the family finances, standing alone, is insufficient to establish that a spouse had no reason to know. Stevens v. Commissioner, supra at 1506. Furthermore, petitioner's assertion that Emmens was evasive and deceitful regarding the family finances and his

illegal income does not support her contention that she had no reason to know about the understatements of tax. Instead of exculpating petitioner, the evasiveness should have caused her to question her then-husband's activities and investigate the tax returns further. See id. at 1507. Petitioner testified that Emmens "was always sticking papers in front of [her] to sign", kept extremely unusual work hours, and was very secretive about his business. Petitioner further testified that he was a "dominant person"; however, she was not prevented from examining the returns or any other documents. A reasonably prudent person in petitioner's position would have been prompted to inquire further into the joint tax liability.

During the years in issue, petitioner lived a lifestyle that far exceeded the income reported on her and Emmens' joint tax returns. Their legitimate locksmith and beauty salon activities were only marginally profitable. Accordingly, we find that petitioner knew, or should have known of the substantial understatements of tax.

<u>Not Equitable To Hold Petitioner Liable</u>

To be entitled to relief as an innocent spouse, petitioner must show that it would be inequitable to hold her liable for the deficiencies in tax for the years at issue. Sec. 6013(e)(1)(D). Again assuming, arguendo, that petitioner had satisfied the knowledge requirement, she still is not entitled to innocent

spouse status because she failed to prove that it would be inequitable to hold her liable.

In deciding whether it is inequitable to hold a spouse liable for a deficiency, we consider whether the purported innocent spouse "significantly benefited", either directly or indirectly, from the unreported income. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 241 (1986), affd. 826 F.2d 470 (6th Cir. 1987); sec. 1.6013-5(b), Income Tax Regs. Normal support is not considered a significant benefit. Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs. We consider the lifestyle to which the taxpayer is accustomed when considering what constitutes normal support. Sanders v. United States, 509 F.2d at 168; Belk v. Commissioner, supra.

It is also relevant to consider whether the spouse claiming relief has been deserted, divorced, or separated. Sec. 1.6013-5(b), Income Tax Regs. We note that petitioner is now divorced from Emmens and has since remarried. We further recognize, however, that petitioner was not divorced from Emmens until 1994, after he had entered into a plea agreement for violation of section 7201. The provisions of this plea agreement included the dismissal of all criminal counts of tax liability against petitioner. In addition, we examine the probable future

hardships that would be imposed on the spouse seeking relief, if such relief were denied. Sanders v. United States, supra.

Petitioner contends that she did not enjoy any economic benefit beyond normal support from the understatement. In support of her contention, petitioner claims that Emmens "never spent any money on her" and that Emmens' girlfriends benefitted from his unreported income. This contention overlooks the fact that petitioner moved to a new house, drove a new Cadillac, occasionally utilized the planes and boats from the drug smuggling operation for personal and social use, and generally lived a lifestyle that exceeded normal support.

Considering all the facts and circumstances involved herein, we conclude that it would not be inequitable to hold petitioner liable for the determined understatement.

Accordingly, we hold that petitioner is not an innocent spouse under section 6013(e).

Issue 2. Addition to Tax for Fraud

Respondent determined that petitioner is liable for the addition to tax for fraud under section 6653(b) for the years at issue. Petitioner asserts that she is not liable for the addition to tax for fraud because she lacked fraudulent intent and had no knowledge of Emmens' illegal activities.

If any part of an underpayment is due to fraud, a taxpayer is liable for an addition to tax equal to 50 percent of the

underpayment. Sec. 6653(b). In addition, there is added to the tax 50 percent of the interest due on the portion of the underpayment attributable to fraud. Sec. 6653(b)(2). In the case of joint returns, assessing the addition to tax for fraud against both taxpayers requires participation of both the husband and wife in the fraud. Sec. 6653(b)(4).

The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. 654, 660 (1990). First, the Commissioner must prove that there is an underpayment. Parks v. Commissioner, supra. The Commissioner may not rely on the taxpayer's failure to carry the burden of proving the underlying deficiency. Id. at 660-661. Second, the Commissioner must show that the taxpayer intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent tax collection. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Parks v. Commissioner, supra at 661; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

Underpayment

The Commissioner may prove that the taxpayer underpaid tax by proving that the taxpayer had a likely source of the unreported income, Holland v. United States, 348 U.S. 121 (1954); Parks v. Commissioner, supra; Nicholas v. Commissioner, 70 T.C. 1057 (1978), or, where the taxpayer alleges a nontaxable source, by disproving the alleged nontaxable source; United States v.

Massei, 355 U.S. 595 (1958); Kramer v. Commissioner, 389 F.2d 236, 239 (7th Cir. 1968), affg. T.C. Memo. 1966-234; Parks v. Commissioner, supra. Petitioner does not allege that she had nontaxable sources of income. Moreover, we find that petitioner's involvement in illegal narcotics trafficking activities was a likely source of the unreported income. Petitioner and Emmens underpaid the tax due on their joint returns for each year at issue in which respondent applied the net worth method.

### Fraudulent Intent

Respondent must prove by clear and convincing evidence that petitioner had fraudulent intent. Parks v. Commissioner, supra at 664. Fraud is defined as actual, intentional wrongdoing, Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939), or intentionally committing an act for the specific purpose of evading a tax believed to be owing, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81.

The Commissioner may prove fraud by circumstantial evidence because direct evidence of the taxpayer's intent is rarely available. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). The courts have developed a number of objective indicators or "badges" of fraud, such as: (1) A pattern of substantial understatements of income,

(2) inadequate books and records, (3) implausible or inconsistent explanations of behavior, (4) engaging in illegal activities, (5) failure to cooperate with tax authorities, (6) concealing assets, and (7) dealing in excessive amounts of cash. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Estate of Mazzoni v. Commissioner, 451 F.2d 197, 202 (3d Cir. 1971), affg. T.C. Memo. 1970-37. We consider all of the facts and circumstances of each case to decide if fraudulent intent is present. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Upon examination of the entire record, we conclude that petitioner's underpayment of Federal income taxes for 1982, 1983, and 1984 is attributable to fraud.

A pattern of consistent underreporting of income for several years, especially when accompanied by other circumstances showing intent to conceal, such as illegal narcotics trafficking, is strong evidence of fraud. Holland v. United States, supra; Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Estate of Mazzoni v. Commissioner, supra; Anderson v. Commissioner, 250 F.2d 242, 250 (5th Cir. 1957), affg. on this issue T.C. Memo. 1956-178. Petitioner had unreported income of $41,908 in 1982, $58,745 in 1983, and $262,147 in 1984.

A taxpayer's failure to keep adequate records is a badge of fraud. Bradford v. Commissioner, supra; Lollis v. Commissioner, 595 F.2d 1189, 1192 (9th Cir. 1979), affg. T.C. Memo. 1976-15. Petitioner did not keep adequate records.

Implausible or inconsistent explanations of behavior by a taxpayer can show that he or she had fraudulent intent. Bradford v. Commissioner, supra at 307; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Petitioner's testimony was not credible. Petitioner's claim that she was uninvolved and completely unaware of the drug trafficking operation is implausible.

Engaging in illegal activities is evidence that the taxpayer intends to evade tax. Bradford v. Commissioner, supra at 308; see Patton v. Commissioner, supra (income from illegal activities is a badge of fraud). Petitioner engaged in illegal drug activities during the years in issue.

A taxpayer's failure to cooperate with the Commissioner's examining agents is a badge of fraud. Bradford v. Commissioner, supra. Petitioner did not cooperate with respondent's examining agents. Instead, she removed several things from her home, including a file cabinet containing financial records, before IRS agents could execute a search warrant.

If a taxpayer conceals assets, it is evidence of fraud. Bradford v. Commissioner, supra. Petitioner's home, automobile,

and various assets used in the drug trafficking operation were held by corporations in order to conceal ownership.

Extensive dealing in large amounts of cash also constitutes evidence of fraud.  Estate of Mazzoni v. Commissioner, supra. Various assets used in the drug trafficking operation were paid for in full, and petitioner's $250,000 home was paid for in cash. On occasion, petitioner would also "pay-out" other members of the smuggling operation in cash.

After scrutinizing the above-mentioned factors, in combination with the testimony of Sydoriak, we conclude that the record contains clear and convincing evidence of petitioner's intent to conceal, mislead, or otherwise prevent the collection of taxes on the unreported income for the years in issue.  We hold that the understatements of tax attributable to the unreported income were due to fraud.  Accordingly, we sustain respondent's determination that petitioner is liable for additions to tax for fraud.

Issue 3.  Addition to Tax for Substantial Understatement

Respondent determined that petitioner is liable for additions to tax for substantial understatement under section 6661 for the years in issue.  Petitioner asserts that she is entitled to innocent spouse status and therefore not liable for the addition to tax for substantial understatement.  We have found that petitioner is not entitled to innocent spouse status.

A taxpayer is liable for an addition to tax for substantial understatement equal to 25 percent of the understatement.[5] Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is the excess of the corrected tax over the amount of tax reflected on the return as filed. Sec. 6661(b)(2). An understatement is "substantial" if it exceeds the greater of $5,000 or 10 percent of the corrected tax. Sec. 6661(b)(1).

There was an understatement each year for the years in issue. The understatements were "substantial" because they exceeded the greater of $5,000 or 10 percent of the corrected tax. Accordingly, the additions to tax under section 6661 are sustained.

For the foregoing reasons,

Decision will be entered

under Rule 155.

---

[5] This addition to tax does not apply to returns due after Dec. 31, 1989.